24 F.3d 790
 16 O.S.H. Cas. (BNA) 1681, 16 O.S.H. Cas. (BNA) 1824,
1994 O.S.H.D. (CCH) P 30,424
CARLISLE EQUIPMENT COMPANY, Petitioner,
v.
UNITED STATES SECRETARY OF LABOR AND OCCUPATIONAL SAFETY and
Health Review Commission, Respondents.
 No. 93-3014.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 30, 1993.
Decided April 1, 1994*.
 
 Michael S. Glassman (argued and briefed), Gary L. Herfel, Dinsmore & Shohl, Cincinnati, OH, for Carlisle Equipment Co.
 Ray Darling, Secretary, OSHRC, Washington, DC, Daniel J. Mick, U.S. Department of Labor, Office of the Sol., Washington, DC, William S. Kloepfer, Office of the Sol., U.S. Dept. of Labor, Cleveland, OH, for Occupational Safety & Health Review Comm'n.
 Ray Darling, Secretary, OSHRC, Ann Rosenthal, Daniel J. Mick, Jennifer U. Toth (argued and briefed), U.S. Dept. of Labor, Office of the Sol., Washington, DC, William S. Kloepfer, Office of the Sol., U.S. Dept. of Labor, Cleveland, OH, for United States Secretary of Labor.
 Before: JONES and SUHRHEINRICH, Circuit Judges; and McKEAGUE, District Judge.**
 SUHRHEINRICH, Circuit Judge.
 
 
 1
 Defendant Carlisle Equipment Co. ("Carlisle Equipment") appeals the Occupational Safety and Health Review Commission's ("the Commission") decision, holding it liable for two safety violations which occurred during renovation of the Montgomery County courthouse. The issues presented are (1) whether the Commission erred in upholding a citation against Carlisle Equipment for committing a serious violation in attempting to lift a 5800-pound air conditioning unit using a crane configured to have a capacity of 3700 pounds, and (2) whether the Commission violated Carlisle Equipment's due process in amending the complaint to include a citation for the lift of a second cooling unit from a delivery truck to the ground. We AFFIRM on the first issue and REMAND the second issue for the reasons discussed below.
 
 I.
 
 2
 Carlisle Equipment, a crane rental company, rented a crane and operator to Oberle/Jordre/Muth Brothers ("Muth"), a rigging company hired to remove an old air conditioner from the Montgomery County courthouse. Muth told Robert Carlisle, a branch manager for Carlisle Equipment, that the air conditioning unit weighed 3400 pounds; however, it actually weighed 5800 pounds. Robert Carlisle did not verify the weight of the load, but determined, based upon the inaccurate information provided by Muth, that the lift could be made with a 65-ton hydraulic truck crane with a 186-foot boom. The crane he selected for Muth could lift a maximum of 3700 pounds.
 
 
 3
 Prior to the scheduled lift, Carlisle and the crane operator, Cecil Johnson, went to the courthouse to determine where to place the crane, and how far the boom should be extended to perform the lift of the air conditioner from the roof. On lift day, before Johnson positioned the crane for removal of the old air conditioner, Muth asked Johnson to unload a new air conditioner from a truck bed. Johnson sought permission from Robert Carlisle to unload the unit which weighed 5500 lbs. Johnson testified that Robert Carlisle authorized its removal even though the weight of the new air conditioner exceeded the capacity of the crane, because given the safety factor, Robert Carlisle believed the crane would not be compromised. Johnson did remove the unit from the truck without incident; however, when Johnson attempted to remove the old air conditioner from the building, the boom of the crane collapsed because the actual weight of the conditioner grossly exceeded the capacity of the crane.
 
 
 4
 After the accident, OSHA safety compliance officer Richard Liston investigated the circumstances and issued citations on behalf of the Secretary of Labor to both Carlisle Equipment and Muth. The citation issued to Carlisle Equipment cited violations of Sec. 5(a)(2) of the Act and 29 C.F.R. Sec. 1926.550(a)(1)[1], for failure to comply with the manufacturer's specifications as to the operation of the crane. Carlisle Equipment contested the citation and after a hearing before an Administrative Law Judge ("ALJ"), the citation was affirmed. Carlisle Equipment petitioned the Commission for review. Because no member directed review within thirty days, the ALJ's decision became its final order. 29 U.S.C. Sec. 661(j). Carlisle Equipment then petitioned this court to reverse the final order. 29 U.S.C. Sec. 660(a).
 
 II.
 
 5
 The Occupational Safety and Health Act of 1970, 29 U.S.C. Sec. 651 et seq., ("OSHA") provides that the Secretary of Labor may promulgate safety and health standards and requires each employer to comply with these standards. 29 U.S.C. Secs. 654(a)(2), 665. Review of an OSHA decision is limited and findings of fact are conclusive if supported by substantial evidence on the record. Dunlop v. Rockwell Int'l, 540 F.2d 1283, 1287 (6th Cir.1976). Determinations on issues of law must be upheld unless "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Empire-Detroit Steel Div. v. Occupational Safety and Health Review Comm'n, 579 F.2d 378, 383 (6th Cir.1978). To establish a violation pursuant to Sec. 5(a)(2) of the Act, the Secretary must show by a preponderance of the evidence that (1) the cited standard applies to the facts, (2) the requirements of the standard were not met, (3) employees had access to the hazardous condition, and (4) the employer knew or could have known of the hazardous condition with the exercise of reasonable diligence. Walker Towing Corp., 14 BNA OSHC 2072, 1991 CCH OSHD p 29,239 (No. 87-1359, 1991).
 
 III.
 
 6
 Carlisle Equipment contends that the Commission erred in upholding the citation for two reasons: (1) Carlisle Equipment had no actual or constructive knowledge of the hazardous condition; and (2) Carlisle Equipment was not in control of the site or lift. In addressing the first argument, it is undisputed that Carlisle had no actual knowledge that the weight of the air conditioner exceeded the manufacturer's specifications on the capacity of the crane. Carlisle believed the weight of the unit was 3400 pounds, a weight within the capacity of the crane. Constructive, not actual knowledge, is at issue. To show constructive knowledge, the Secretary must prove, that Carlisle "could have known with the exercise of reasonable diligence of the noncomplying condition." Secretary of Labor v. MCC of Florida, Inc., 1981 WL 18903, * 4 (O.S.H.R.C. May 28, 1981). Here, the ALJ's finding that Carlisle Equipment could have known with the exercise of reasonable diligence that the crane was insufficient to make the lift is supported by substantial evidence in the record. In deciding whether Carlisle Equipment had constructive knowledge, the ALJ noted that Carlisle Equipment's failure to follow the normal procedure of observing the load before making a lift or by taking other steps to insure it received accurate information concerning the weight demonstrated its failure to exercise reasonable diligence.
 
 
 7
 From the facts the ALJ concluded that Muth's reputation and past relationship with Carlisle Equipment were insufficient bases to foreclose responsibility on Carlisle Equipment. Although Muth assured Carlisle of the weight on three occasions, the estimates were vastly different, varying from 3400 pounds to 1300 pounds. Further, Robert Carlisle never went up to the roof to observe the unit, despite a standard practice to do so. A visual inspection would have shown that the unit was large, made of metal and wood, and filled with debris. Moreover, the new unit weighed substantially more than the estimate given for the old unit, a fact that, in light of all the other facts, should have triggered a question as to accuracy of the estimate. Finally, the crane, configured to have a maximum capacity of 3700 pounds, gave only 300 pounds leeway over the weight estimate given by Muth. With the weight of the crane attachments added to the lift, there was less than 100 pounds excess capacity. Consequently, the ALJ concluded that any reasonably diligent crane operator would have made some effort to ascertain the accuracy of the estimate, and that Carlisle Equipment had constructive knowledge of the violation.
 
 
 8
 Carlisle Equipment's argument that industry practice[2] places sole responsibility for determining the weight of the load on the rigging contractor does not absolve it of responsibility for both legal, factual, and policy reasons. Legally, the industry practice had no application to this violation.[3] Although it is normally considered in cases cited under Sec. 5(a)(1) of the Act, the General Duty Clause,[4] or in connection with certain personal protective equipment standards where means of compliance are not specified, where the Secretary has cited under Sec. 5(a)(2) of the Act, and the cited standard "prescribes the required conduct in specific terms," and industry practice is inapplicable. See Cleveland Elec. Illuminating Co., 14 BNA OSHC 1729, 1990 CCH OSHD p 29,0494 (No. 84-593, 1989), rev'd on other grounds, 910 F.2d 1333 (6th Cir.1990). Here, the Secretary explicitly requires compliance with manufacturer's specifications.
 
 
 9
 Second, although ANSI standards place the obligation on Muth to determine weight, here, Muth's reputation and experience were called into question because of the changing weight estimates and other above-mentioned factors. Accordingly, we find the ALJ's finding that Carlisle Equipment had constructive knowledge of the violation is supported by the record. Reasonable diligence implies effort, attention, and action not mere reliance upon the action of another. Carlisle Equipment's conduct did not meet this standard.
 
 
 10
 Carlisle Equipment's assertion that the Commission's decision fundamentally changes industry practice by requiring rental companies to become rigging companies is an overstatement. We recognize that, in most instances, reliance on the weight estimate provided by a rigging company will suffice. In this case, however, the preventative and remedial objectives of OSHA are best served in holding the crane rental company liable.
 
 
 11
 In turning to its second argument, Carlisle Equipment asserts that because its situation is analogous to those involving contractor-subcontractor relationships, it had no control over the site or the lift, and we cannot impose liability. We disagree.
 
 
 12
 In Secretary of Labor v. Decks, Inc. of Florida, 8 O.S.H.D. (BNA) 2176 (1980), the Commission noted that the Act was not served by imposing liability on a subcontractor who could not "realistically be expected to detect a violation in the first place, or abate it once it is discovered...." See also Secretary of Labor v. Sasser Electric & Mfg. Co., 1984 WL 34886, * 3 (O.S.H.R.C. July 20, 1984) (holding employer not responsible for independent contractor's violation of standard requiring clearance distance of ten feet between power line and crane and load). However, the general-subcontractor relationship is not really analogous to the situation here. Carlisle Equipment could have detected a violation and had authority to refuse to make the lift once it became known. See A/C Elec. v. Occupational Safety and Health Review Comm'n, 956 F.2d 530 (6th Cir.1991) (holding subcontractor could be liable for violations even if unclear who created hazardous condition). Both Carlisle Equipment and Muth had control over the execution of the lift. Robert Carlisle determined the configuration of the crane and Muth the weight. Johnson was free at any time to refuse to make the lift if he believed safety was a problem, and admitted at the hearing that he had taken such action in the past.[5] Here, Robert Carlisle went out to the site to determine where the crane should be placed and determined which size crane should be used for the lift. The evidence also showed that Johnson refused to move the new unit off the truck until Robert Carlisle was consulted. Further, Carlisle Equipment paid Johnson and only Carlisle Equipment could fire Johnson. Accordingly, the facts support the finding that Carlisle Equipment was an employer and retained some measure of control over the lift.
 
 IV.
 
 13
 Finally, defendant argues that the Commission erred in upholding the citation as amended by the ALJ to include the removal of the new unit from the truck because it was not given notice in the citation or the complaint that OSHA intended to cite Carlisle Equipment for this violation. Section 658(a) of the Act provides that each citation "shall describe with particularity the nature of the violation...." 29 U.S.C. Sec. 658(a). The Commission interprets this provision to require fair notice as to the nature of the alleged violation. Reynolds Metals Co., 1973 WL 4250 (O.S.H.R.C. Nov. 8, 1973). The * 795. information must give employers opportunity to prepare a defense.
 
 
 14
 In the instant case, the citation issued to Carlisle Equipment alleged that the crane picked up "a load that exceeded the manufacturer's load rating," in violation of 29 C.F.R. Sec. 1926.550(a)(1). The citation indicated "a load," not two loads. Further, defendant contends that the only evidence relative to the removal of the new unit from the truck was presented to show that Carlisle Equipment should have known the weight of the old unit.
 
 
 15
 A review of the record shows that some evidence of the first lift was given at trial. Although there was sufficient evidence to establish a violation based on this incident, the question is not whether a violation occurred, but whether Carlisle Equipment had notice and a fair opportunity to defend.
 
 
 16
 Pursuant to 29 C.F.R. Sec. 2200.35(f)(3), Fed.R.Civ.P. 15(b) governs the availability of amendment. When an ALJ amends a citation to conform to the evidence, due process is not necessarily violated. Advance Bronze, Inc. v. Dole, 917 F.2d 944, 955 (6th Cir.1990). Hence, the ALJ was free to amend provided Carlisle Equipment was not surprised or prejudiced by the action. Although the Secretary did not change the theory of liability, the evidence of the lift of the new air conditioner initially appeared to be aimed at the issue of constructive knowledge, and it does not necessarily follow that Carlisle Equipment impliedly consented to try the second violation merely because it did not object to this evidence. To establish implied consent, it must appear that the parties understood the evidence to be aimed at the unpleaded issue. Yellow Freight Sys., Inc. v. Martin, 954 F.2d 353 (6th Cir.1992) (citing MBI Motor Co. v. Lotus/East, Inc., 506 F.2d 709, 711 (6th Cir.1974)). Here, the discussion between the ALJ and counsel, the complaint, and the evidence admitted at the hearing, all indicate that the only lift at issue was the removal of the old unit from the roof. Evidence of the lift of the new unit was understood by all as being introduced to show constructive knowledge of the hazardous condition arising from the lift of the old unit. Thus, introduction of this evidence did not fairly serve as notice that a new violation was entering the case. See Yellow Freight, 954 F.2d at 358 (citations omitted). Because we find notice inadequate, we hold that Carlisle Equipment's due process rights have been violated.
 
 
 17
 We cannot discern from the record whether Carlisle Equipment suffered an increased penalty as a result of the additional citation; however, because the Secretary requested a $4,000 penalty for the single violation cited in the complaint, the ALJ imposed that penalty after finding two violations. In light of our finding that due process has been violated with regard to the second cited violation, we REMAND this matter to the ALJ for determination as to whether the penalty should be adjusted.
 
 
 
 *
 This decision was originally issued as an "unpublished decision" filed on April 1, 1994. On May 6, 1994, the court designated the opinion as one recommended for full-text publication
 
 
 **
 The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 29 C.F.R. Sec. 1926.550(a)(1) provides that the "employer shall comply with the manufacturer's specifications and limitations applicable to the operation of any and all cranes and derricks. Where manufacturer's specifications are not available, the limitations assigned to the equipment shall be based on the determinations of a qualified engineer competent in this field and such determinations will be appropriately documented and recorded. Attachments used with cranes shall not exceed the capacity, rating, or scope recommended by the manufacturer."
 
 
 [2]
 American National Standards Institute ("ANSI") B30.5-1968, Sec. 5-3.2, subsection 6 provides that "[w]hen loads which are limited by structural competence rather than by stability are to be handled, the person responsible for the job shall ascertain that the weight of the load has been determined within plus or minus 10 per cent before it is lifted."
 
 
 [3]
 Even if the cited ANSI standard were applicable, its value to Carlisle Equipment's defense is questionable. Because the standard requires only that the weight estimate be within a range of ten percent greater or less than the actual weight of the load, even if we assume that Carlisle Equipment reasonably trusted that Muth had complied with the standard, the exercise of reasonable caution would have alerted Carlisle Equipment that the 3400 pound estimate reflected a potential actual weight of 3740 pounds--3400 pounds plus ten percent of 3400. Thus, the potential actual weight of the load exceeded the crane capacity even without the additional weight of the attachments
 
 
 [4]
 Section 5(a)(1) provides that each employer "shall furnish to each of his employees employment and a place of employment which are free from recognized hazards...."
 
 
 [5]
 Section 5-3.1.3d of ANSI provides that the operator has the authority to stop and refuse to handle loads until safety has been assured