RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0124p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

DONNA CRAIG,

                           *Plaintiff-Appellant,*

    *v.*
                                       No. 15-3396

BRIDGES BROS. TRUCKING LLC; MICHAEL BRIDGES,
                           *Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:12-cv-00954—Edmund A. Sargus, Jr., Chief District Judge.

Argued: December 10, 2015

Decided and Filed: May 19, 2016

Before: GRIFFIN and KETHLEDGE, Circuit Judges; CLELAND, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Andrew Biller, MARKOVITS, STOCK & DEMARCO, LLC, Columbus, Ohio, for Appellant. Daniel J. Clark, VORYS, SATER, SEYMOUR AND PEASE LLP, Columbus, Ohio, for Appellees. **ON BRIEF:** Andrew Biller, MARKOVITS, STOCK & DEMARCO, LLC, Columbus, Ohio, Laren Knoll, THE KNOLL LAW FIRM, LLC, Dublin, Ohio, for Appellant. Daniel J. Clark, James W. Pauley, III, VORYS, SATER, SEYMOUR AND PEASE LLP, Columbus, Ohio, for Appellees.

---

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

---

**OPINION**

---

CLELAND, District Judge.  Donna Craig sued her former employer, Bridges Brothers Trucking, under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, seeking compensation for some four years' worth of unpaid overtime work. She had been Bridges Brothers' bookkeeper.  Both parties moved for summary judgment on the record established pre-trial, and the district court ruled in favor of the employer, holding that by "miscalculating" her own overtime pay rate, Craig had "failed to follow the reasonable time reporting procedures established by [the employer] and . . . therefore thwarted its ability to comply with the FLSA." The principal questions presented in this appeal are how an employer might acquire at least constructive knowledge of its employee's overtime hours, and—as a matter of fact—whether such knowledge is attributable to Bridges Brothers here.  Concerning such factual determinations there exist several material, disputed issues that require resolution at trial. The district court's grant of Defendant's Motion for Summary Judgment will be reversed, while its denial of Plaintiff's Cross-Motion for Summary Judgment will be affirmed.[1]

I.

In October 2010, Plaintiff/Appellant Donna Craig was hired as a bookkeeper for Defendant/Appellee Bridges Brothers Trucking, LLC.  In this capacity, she was responsible for processing the company's payroll, invoicing, billing, and reconciling bank statements.  These tasks frequently consumed more than forty hours in a week. She recorded excess hours in fifty-four of the ninety-five weeks she was a Bridges Brothers employee.  This was especially pronounced during her first year of employment, during which she put in overtime during thirty-seven of her first fifty-two weeks—over seventy percent of the time.  In total, over the course of

---

[1]Craig has also sued under the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code § 4111.01. Because the FLSA and the OMFWSA have the same overtime requirements, the outcomes will be the same and the claims can be evaluated together.  *See McCrimon v. Inner City Nursing Home, Inc.*, No 1:10-cv-392, 2011 WL 4632865, at *4 (N.D. Ohio Sept. 30, 2011).  Craig also brought a claim under Ohio's Prompt Pay Act, Ohio Rev. Code § 4113.15.  The parties and trial court, however, agreed that this claim "rises and falls with her FLSA and Ohio Overtime claims." (Dkt. # 41, Pg. ID 1842.)  Thus, a reversal on the FLSA claim necessitates a reversal of the Prompt Pay Act claim, as well.

her employment, Craig worked nearly five hundred overtime hours. Nevertheless, with the exception of a single overtime hour near the end of her tenure, she was never paid at the legally mandated rate of time-and-a-half for these additional hours of work, but instead received only her "straight time" wage of $17.50 per hour. In fact, during some weeks, she worked dozens of additional hours from home at night or on the weekends, but did not charge Bridges Brothers anything. The company eventually hired another person to act as Craig's assistant, and by doing so alleviated her need to so consistently work overtime.

The parties disagree about whether Craig knew that the law required Bridges Brothers to pay any and all employees who worked over forty hours a week overtime wages. Specifically, the parties disagree about the import of a portion of Craig's deposition:

> Q. . . . When you were an employee of Bridges Bros. And you were processing payroll, did you—are you aware of employees being paid overtime compensation?
> A. Yes.
> Q. Do you know which employees of the company received overtime compensation?
> A. Primarily union employees and one mechanic.
> Q. And do you know why those employees received overtime compensation?
> A. Union requires it.
> Q. Do you have any other circumstances where you're aware of an employee receiving overtime compensation?
> A. The one mechanic requested his overtime.
> Q. And he was not a union employee?
> A. Correct.
>
> . . .
> Q. How did you know to pay those employees overtime compensation?
> A. I was directed by Michael Bridges.

(Dkt. 24-1, Pg. ID 414-15.) Craig cites this passage as evidence that Mr. Bridges indicated that only a small group of employees—not including her—were eligible for time-and-half. Conversely, Bridges Brothers cites the same passage to support the proposition that Craig paid overtime to other people, and therefore should have known that she was eligible for it as well.

Bridges Brothers required all of its employees, including Craig, to create detailed time sheets documenting their hours each week. At first, these time sheets needed to include only the number of hours the employee worked each day and their rate of pay. However, beginning in

April 2011, Craig was also required to list the tasks she performed each day.  Mr. Bridges, the company's owner, claims these policies were put in place so he could "keep track of [Craig's] time." (Dkt. # 24-2, Pg. ID 569.)

As bookkeeper, Craig was charged with collecting the time sheets from Bridges Brothers' other employees and entering the data (including her own) into the payroll software each week. She then gave all of the time sheets to Mr. Bridges, along with a payroll summary, for his review and approval.  No one got paid until Mr. Bridges approved the report.  Nevertheless, Mr. Bridges insists that he never looked at the time sheets "in any detail," but instead relied on the summary report alone.  (Dkt. # 24-2, Pg. ID 569.)  As long as the total payroll was within the range expected by Mr. Bridges, then it was approved, and Craig would finalize the payroll process in the computer.

Mr. Bridges, therefore, claims that he was completely unaware that Craig was working overtime.  Craig disputes this, pointing to several pieces of evidence in addition to her time sheets which, if believed, may suggest that Mr. Bridges and his company were aware that she was working extra hours.  First, in her deposition, Craig claimed that on at least one occasion she verbally informed Mr. Bridges that she was taking work home to complete on the weekends. Second, Mr. Bridges' son admitted in his deposition that he did notice Craig working overtime hours, and on June 1, 2011, emailed his father encouraging him to cap Craig's hours to forty per week for the rest of the month.  Later, in an affidavit, he asserted this email had nothing to do with overtime hours, but instead he was merely concerned that his father was being forced to come into the office on the weekends in order to supervise Craig.

Eventually, Craig realized that she was being underpaid. She claims that her understanding of overtime law "became clearer as [Bridges Bros.] added union employees and started paying overtime to other individuals."  (Dkt. 24-1, Pg. ID 418.)  When Mr. Bridges suggested cutting Craig's assistant, Craig confronted him, stating "I had finally gotten to where I didn't have to work over 40 hours a week by utilizing the assistant, that if we cut him, I'd have to go back to working more than 40 hours a week and I'd like to be compensated at overtime pay." (*Id.* at Pg. ID 418.)  Craig did not believe that her request was well received, claiming that he

told her that she could keep her assistant, but that she needed to inform him if she felt she needed to work overtime in the future.

That very week, Craig worked 41.5 hours. Craig noted the overtime on her time sheet, but wrote "move 1.5 hours to next week to stay under 40." (Dkt. 27-12, Pg. ID 1312.) Just under one month later, during the week of July 20, 2012, Craig again worked forty-one hours. For the first and only time during her tenure at Bridges Brothers, she recorded a time-and-a-half pay rate for this extra hour on her time sheet. And for the first and only time during her tenure at Bridges Brothers, she was paid a time-and-a-half pay rate for her overtime. Five days later, Bridges Brothers posted an advertisement for Craig's job on Craigslist. Shortly thereafter, she was terminated.

On October 16, 2012, Craig filed this lawsuit, seeking unpaid overtime wages and damages for other issues not currently on appeal. Bridges Brothers then filed a Motion for Summary Judgment on all counts. Craig responded in kind, filing her own Cross-Motion for Summary Judgment. On March 12, 2015, the district court granted Bridges Brothers' motion, and denied Craig's. Craig subsequently filed this timely appeal.

II.

We review a trial court's grant or denial of summary judgment *de novo*. *Road Sprinkler Fitters Local Union No. 699, U.A. AFL-CIO v. Dorn Sprinkler Co.,* 699 F.3d 790, 793 (6th Cir. 2012). When reviewing a summary judgment order, we must "determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Parrett v. Am. Ship Bldg. Co.,* 990 F.2d 854, 858 (6th Cir. 1993) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Therefore, at this stage of litigation, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* (citing *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 158-59 (1970)).

The standards upon which we evaluate motions for summary judgment do not change when, as here, "both parties seek to resolve [the] case through the vehicle of cross-motions for summary judgment." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

> The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.

*Id.* (quoting *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

III.

Craig argues that the trial court erred by granting Defendant's Motion for Summary Judgment. She advances two arguments to support this conclusion. First, Craig argues that the district court inappropriately concluded that she had "waived" her right to overtime pay "by not immediately claiming" it. Appellant Br. 3. Second, she argues that whether Bridges Brothers had constructive knowledge of her overtime hours is an unresolved issue of material fact best left to the jury. *Id.* Both arguments will be addressed in turn.

A.

Craig alleges that the district court erred because it "essentially held that Craig, by miscalculating her overtime rate, waived her right to ever be paid for her hours." *Id.* at 15. (emphasis added). We agree. The district court held "that Plaintiff failed to follow the reasonable time reporting procedures established by Bridges Bros. and that she therefore, thwarted its ability to comply with the FLSA." (Dkt. 41, Pg. ID 1825.) But this conclusion is premised on the faulty assumption that Craig "miscalculate[d] and misreport[ed] her time." (*Id.* at Pg. ID 1822.) As we explain in more detail below, it is undisputed that Craig each week meticulously documented and reported her time, regular and overtime. The only thing "miscalculated" was the applicable hourly rate for the latter.

Even assuming *arguendo* that Bridges Brothers had established a reasonable time reporting procedure of which Craig was aware, affirming the district court's decision would

allow an employee to voluntarily opt out of her rights under the FLSA.  But the Supreme Court has already closed that door and "frequently emphasized the nonwaivable nature of an individual employee's right . . . to overtime pay under the Act." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981).  "FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate."  *Id.* (internal quotation marks omitted).  We therefore reverse this aspect of the district court's decision.

B.

Craig also argues that the trial court erred by finding that Bridges Brothers "did not know or have reason to know that Appellant/Employee worked overtime hours[.]"  Appellant Br. 3. We agree.  The FLSA requires employers to pay their employees time-and-a-half their normal pay rate for work performed in excess of forty hours per week.  Specifically, the FLSA provides:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).  According to the statute, the word employ "includes to suffer or permit to work."  29 U.S.C. § 203(g).  Thus, if an "employer knows or has reason to believe" that an employee "is continuing to work" in excess of forty hours a week, "the time is working time" and must be compensated at time-and-a-half, even if the extra work performed was "not requested" or even officially prohibited.  29 C.F.R. 785.11; *see also Reich v. Stewart*, 121 F.3d 400, 407 (8th Cir. 1997) ("Even if [the employer] had prohibited [the employee's] overtime work . . . [it] could not avoid liability under the FLSA because he had actual and constructive knowledge that [employee] worked overtime.").

In other contexts, we have found that a "reason to believe," or constructive knowledge of something, exists when the employer "should have discovered it through the exercise of reasonable diligence."  *Carlisle Equip. Co. v. U.S. Sec'y. of Labor & Occupational Safety*, 24 F.3d 790, 793 (6th Cir. 1994) ("To show constructive knowledge, the Secretary must prove,

that Carlisle could have known with the exercise of reasonable diligence of the noncomplying condition."); *cf. Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984) ("The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action.  A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.").   Other courts around the country have specifically adopted this standard for FLSA claims, as well.  *See, e.g.*, *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 F. App'x 448, 455 (5th Cir. 2009) ("Constructive knowledge exists if by exercising reasonable diligence an employer would become aware that an employee is working overtime."); *Hertz v. Woodbury Cty.,* 566 F.3d 775, 781 (8th Cir. 2009) ("Because constructive knowledge of overtime work is sufficient to establish liability under the FLSA, if the County, through reasonable diligence, should have acquired knowledge that Plaintiffs were working in excess of their scheduled hours, the jury would have been empowered to find the County liable."); *Allen v. Bd. of Pub. Educ. for Bibb Cty.,* 495 F.3d 1306, 1321 (11th Cir. 2007) ("We have said that if an employer had an opportunity to acquire knowledge of an employee's work by using reasonable diligence, then the employer can be charged with constructive knowledge.").  We now adopt the reasonable diligence standard for FLSA cases.

But, reasonable diligence is not an expectation of omniscience.  In *White v. Baptist Mem'l Health Care Corp.,* we stated that "where an employer has no knowledge that an employee is engaging in overtime work and the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of" the statute.  699 F.3d 869, 872 (6th Cir. 2012) (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414 (9th Cir. 1981)).  Thus, "the employee bears some responsibility for the proper implementation of the FLSA's overtime provisions," and an employer is allowed to put in place reasonable time-reporting procedures to help it keep track of its employees' hours.  *Id.* at 876.  For example, in *White*, a hospital paid its employees overtime for any missed portion of their scheduled, unpaid meal breaks, but only when they recorded the extra time worked in the hospital's "exception log*." Id.* at 872.  The plaintiff, fully aware of the hospital's policy, nonetheless failed to record her missed meal breaks in the log, and subsequently sued to recover unpaid overtime.  *Id.*  Finding for the hospital, we held that "[u]nder the FLSA, *if* an employer establishes a reasonable

process for an employee to report uncompensated work time, the employer is not liable for non-payment if the employee fails to follow the established process." *Id.* at 876 (emphasis added). In such circumstances the relevant standard transforms from "I know that the employee was working" into "I know the employee was working and not reporting his time." *Id.* (quoting *Raczkowski v. TC Const. Co., Inc.,* 8 F.3d 29 (9th Cir. 1993) (table)). Nevertheless, this is not an absolute bar to recovery. *White* carves out two exceptions to the rule, finding that employers who "prevent[] the employees from reporting overtime or [are] otherwise notified of the employees' unreported work" are still on the hook for unpaid overtime. *Id.*

In the instant case, the district court analogized heavily to *White*, concluding that the company could not have had constructive knowledge of Craig's overtime because of "Plaintiff's purposeful acts of miscalculating and misreporting her time" which "prevented Bridges Bros. from acquiring knowledge of her alleged overtime." (Dkt. # 41, Pg ID 1822.) After all, she "knew of the procedure in place to properly submit overtime and how to utilize that procedure" but failed to do so. (*Id.*).

This conclusion misunderstands the evidence presented to the court. Craig did not "miscalculat[e] or misreport[] her time" at all. On the contrary, the undisputed evidence demonstrates that she kept meticulous records, reporting not only how many hours she worked each week, but also where she was working and the tasks she completed each day. She then placed those records, along with the time cards of the other Bridges Brothers employees and a summary report, directly onto the chair of Mr. Bridges for his approval each week. While she may have miscalculated her *pay rate*, she did not miscalculate her *time*.

Furthermore, whether Craig "miscalculate[ed] or misreport[ed]" her pay rate "purposefully" and "knew the procedure in place to properly submit overtime" (if such a procedure existed at all) are unresolved issues of material fact, and therefore should be submitted for resolution at trial. In her deposition, Craig alleges that she did not know she was eligible for time-and-a-half wages until the very end of her employment with Bridges Brothers. She claims that Mr. Bridges instructed her to pay overtime wages to only a specific group of employees—a group of employees which did not include her. When asked why these employees "received overtime compensation" she stated it was because the "Union requires it[.]" (Dkt. # 24-1, Pg. ID

415.) She said nothing about federal or state law. She further explained that she frequently paid herself no wages for work she did at home or at soccer tournaments because she "didn't think the company was in a position to pay [her] for those hours." (*Id.* at 412.) True, the employer and the district court drew different conclusions from this deposition testimony, but "on summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

If these allegations are true—and we are in no position to determine if they are—the district court's invocation of *White* is incongruous. While in *White,* the plaintiff knew she would be compensated if she followed the hospital's meal break plan and submitted her overtime hours, here it is unclear whether Craig even knew she was allowed to petition for overtime compensation at all. Viewing this evidence in the light most favorable to Craig, it cannot be concluded, as a matter of law, that Bridges Brothers truly "establish[ed] a reasonable process for an employee to report uncompensated work time" or (if it existed) that Craig "purposefully" failed to utilize it. *White'*s ban on employer liability for unpaid overtime in such circumstances is inapt.

Furthermore, even if the Appellant's computation of her overtime wages at "straight time" did constitute a failure to comply with an established procedure for reporting her hours, a reasonable fact finder could still determine that this case falls into one of the exceptions carved out in *White* to the liability ban*:* namely those cases "where the employer . . . [was] otherwise notified of the employees' unreported work." *White,* 699 F.3d at 876. This is a disputed issue of material fact. As mentioned above, every week Mr. Bridges was given and approved a report that included Craig's time card. He claimed that he "never looked at [the time cards]," but also specifically testified, in his deposition, that he asked Craig "to write down [on the time cards] what it was she was doing" so that he could "keep track of her time." (Dkt. # 24-2, Pg. ID 569.) Additionally, in his deposition Mr. Bridges' son testified that he wrote an email to his father alerting him to the fact that Craig was working on the weekends. The email said in part: "Donna, no more Sundays and Saturday (payout by Friday at 2:30 p.m., cap to only 40 hours in the month of June). If she can't finish during the week, then it can wait til Monday." (Dkt. # 24-5, Pg. ID

860; Dkt. # 27-1, Pg. ID 1147.)  Mr. Bridges' son claimed he wrote the email because he was frustrated by the fact that his father was having to come into the office on the weekends to supervise Craig.  Viewing all of this evidence in the light most favorable to Craig, however, a juror could conclude that the company was aware of the fact that she was working overtime.  After all, how could Mr. Bridges "keep track of [Craig's] time" if he never looked at the time cards?  Why would Mr. Bridges' son tell Mr. Bridges to cap Craig's work time to forty hours "for the month of June" if they did not know that she had exceeded this threshold in the past?  How could Mr. Bridges not comprehend that Craig was working overtime if he was coming in to supervise her on weekends?

Given these unresolved issues of material fact, we cannot conclude that Bridges Brothers is entitled to judgment as a matter of law.  For this reason, we reverse the district court's grant of Defendant's Motion for Summary Judgment.

IV.

Appellant also challenges the district court's denial of her Cross-Motion for Summary Judgment, arguing that she is entitled to judgment as a matter of law.  We disagree.  Reversing the district court's grant of Bridges Brothers' Motion for Summary Judgment does not automatically mean that we should grant Craig's Cross-Motion for Summary Judgment.  "The court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *Taft Broadcasting Co.,* 929 F.2d at 248.

Craig argues that her "timesheets [sic] *alone* establish, as a matter of law, that she is entitled to overtime wages." Appellant Br. 19 (italics in the original) (bold omitted).  Essentially, this argument boils down to the proposition that "'reasonable diligence' must include, as a matter of law, knowing what is on an employer's own timesheets [sic] and payroll records." *Id.* at 20.  To support this proposition, Craig points to a 1946 case *Anderson v. Mt. Clemens Pottery Co.,* where the Supreme Court held that "[w]hen the employer has kept proper and accurate records the employee may easily discharge his burden [of proving she worked uncompensated overtime] by securing the production of those records."  328 U.S. 680, 687 (1946).  But here, Craig

conflates the issues. In an FLSA motion for summary judgment, a plaintiff must prove both "that he or she performed work for which he or she was not properly compensated," *White*, 699 F.3d at 873, and that the employer had actual or constructive knowledge of that overtime, *Davis v. Food Lion,* 792 F.2d 1274, 1277 (4th Cir. 1986).

No one disputes that Craig worked overtime or that she was not compensated at the statutory rate. As such, this case turns entirely on whether Bridges Brothers "knew or had reason to believe" that Craig was working overtime. Whether a party had the requisite knowledge is a question of fact. *Holzapfel v. Town of Newburg*, 145 F.3d 516, 521 (2d Cir. 1998) ("The jury was to decide as a question of fact, not only how much of plaintiff's time spent with bandit fell within the court's definition of 'work' and would be compensable, but also how much of that time was spent with employer's actual or constructive knowledge."). It requires "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences," all of which "are jury functions, not those of a judge." *Anderson,* 477 U.S. at 255. While a jury *could* conclude that an employer exercising reasonable diligence should know what is on its own time sheets and payroll records, we cannot say as a matter of law that a jury could not conclude otherwise here.

In *Hertz v. Woodbury Cty.,* the Eighth Circuit agreed: "[a]ccess to records indicating that employees were working overtime . . . is not necessarily sufficient to establish constructive knowledge." 566 F.3d 775, 781-82 (8th Cir. 2009). While that case specifically involved non-payroll records, the same is true for official time sheets. Some cases "may lend [themselves] to a finding that access to records would provide constructive knowledge of unpaid overtime work," but that is not a foregone conclusion. *Id.* Such determinations often hinge on the evidence presented at trial, and therefore should be left to the jury. We are unpersuaded by Craig's argument, and affirm the trial court's denial of Craig's Cross-Motion for Summary Judgement.

V.

For the reasons stated above, the district court's grant of Defendant's Motion for Summary Judgment is REVERSED, the district court's denial of Plaintiff's Cross-Motion for

Summary Judgment is AFFIRMED, and the case is REMANDED for further proceedings in accordance with this opinion.