# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2612

_____

| | | |
|---|---|---|
| Charles Hertz; Todd Wieck; | * | |
| Jim Cunningham; Estate of | * | |
| David Fox; All Other Situated | * | |
| Employees; Rebecca Legore- | * | |
| Post; Michael A. Tadlock; | * | |
| Scott Lanagan, | * | Appeal from the United States |
| | * | District Court for the Northern |
| Plaintiffs–Appellants, | * | District of Iowa. |
| | * | |
| v. | * | |
| | * | |
| Woodbury County Iowa, | * | |
| | * | |
| Defendant–Appellee. | * | |

_____

Submitted: February 11, 2009
Filed: May 28, 2009

_____

Before LOKEN, Chief Judge, MELLOY and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Seven police officers and other unnamed plaintiffs ("Plaintiffs") currently or formerly employed by the Woodbury County Sheriff's Department (the "Sheriff's Department") filed suit against Woodbury County (the "County") for its alleged failure to pay overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19. A jury returned a verdict in favor of the County on

all issues and claims. Plaintiffs appeal, claiming that the district court[1] erred by failing to grant their motion for summary judgment, by failing to grant their motion for judgment as a matter of law, and by issuing and refusing to issue certain jury instructions. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Plaintiffs filed suit against the County, alleging that it had failed to pay them overtime compensation in violation of the FLSA. Specifically, Plaintiffs raise three distinct pay-related claims. Plaintiffs Jim Cunningham and Charles Hertz allege that the County failed to compensate them for work performed during their commute time. Plaintiffs Cunningham, Todd Wieck, the Estate of David Fox, Michael Tadlock, Scott Lanagan, and Rebecca Legore-Post claim that the County failed to compensate them for work performed during Plaintiffs' mealtimes. Plaintiffs Cunningham, Hertz, Wieck, Tadlock, and Lanagan allege unpaid compensation for general overtime.

During the time relevant to this case, the named Plaintiffs occupied a number of varied positions in the Sheriff's Department. Sergeant Cunningham has been employed at the Sheriff's Department since June 1980. He is in charge of investigations, crime prevention, the school-resource program, and the Drug Abuse Resistance Education ("DARE") program. Cunningham's scheduled work hours are from 8:00 a.m. until 4:30 p.m. with a half-hour lunch break. He is required to start and end the day at his desk with administrative duties. Lieutenant Hertz has been employed at the Sheriff's Department since May 1978. He is in charge of all of the patrol shifts, the hostage-rescue team, the K-9 division, and investigations and crime prevention. His scheduled hours are from 8:00 a.m. to 4:00 p.m. with no lunch break. He is also required to start and end his work day at his desk with administrative duties. Cunningham reports directly to Hertz.

_____

[1] The Honorable Donald E. O'Brien, United States District Judge for the Northern District of Iowa.

Sergeant Wieck has been employed by the Sheriff's Department since July 1990 as a DARE officer, a school-resource officer, and a community-policing officer. He works from 8:00 a.m. until 4:30 p.m. with a half-hour lunch break. Lanagan has been an employee of the Sheriff's Department since May 1987. As a crime-scene investigator, his scheduled work hours are from 7:00 a.m. until 3:30 p.m.; however, during the summer he works from 8:00 a.m. until 4:30 p.m. He has a half-hour lunch break. Former Sergeant Tadlock worked at the Sheriff's Department from April 1977 until June 2004. He was most recently in charge of the crime-prevention division and worked from 8:00 a.m. until 4:30 p.m. with a half-hour lunch break. Former Sergeant Legore-Post was employed at the Sheriff's Department from May 1985 until February 2006 as a court-security officer. Her scheduled hours were from 8:00 a.m. until 4:30 p.m. with a half-hour lunch break. Fox was employed by the Sheriff's Department from February 1981 until his death. At the time of his death, he worked in the day-patrol division from 8:00 a.m. until 4:30 p.m. with a half-hour lunch break. The timing of the officers' lunch breaks was at their discretion.

Woodbury County is 960 square miles, encompassing Sioux City and several largely rural communities. Many of the Plaintiffs testified that they live many miles from the police station and have lengthy commutes each morning. The County provides all of its officers with marked police vehicles that it authorizes them to drive to and from their residences each day. It has been the County's practice to keep track of officers' actions by having them report their availability through a series of codes. The code "10-41" signifies that an officer has begun his or her tour of duty and is prepared to answer calls for assistance, including requests to help motorists, investigate accidents, and direct traffic. Conversely, the code "10-42" signals that an officer has completed his or her tour of duty and is no longer available to respond for police business. It is undisputed that the County's policy requires officers to go "10-41" at their residences at the beginning of each work day. Once an officer has returned to his or her residence at the end of a shift, the officer is able to go "10-42." The County tracks the duty-status of an officer through a program known as Computer

Aided Dispatch ("CAD"). CAD records the moment that an officer goes "10-41" in the morning and the moment at which each officer goes "10-42" in the evening. It is also used throughout the day if an officer is unavailable for any reason. In addition to allowing the officers to engage in law-enforcement activity while they drive, by allowing the officers to use patrol cars as commute vehicles, the County hopes to diminish response time to requests for assistance and generally increase police presence in the jurisdiction.

The FLSA requires the County to keep track of the working hours of each employee that falls under the Act. 29 C.F.R. § 516.2. The County does this through a "sign-in sheet." Under this system, each officer is required to initial a sheet to indicate that the officer has worked his or her scheduled hours that day. In addition to this sheet, the payroll office uses overtime slips and vacation logs to compute each officer's time worked. When officers work overtime, they must submit an overtime slip to their supervisors indicating the amount of time worked in excess of their scheduled hours. The supervisors are then responsible for approving the overtime, and the slip is co-signed by either the division head or the chief deputy. After obtaining the proper signatures, the slip is forwarded to the payroll office and paid at the rate of one-and-a-half times the rate of pay. A former chief deputy testified that these overtime requests were "rarely denied."

Plaintiffs moved for summary judgment arguing that there were no material facts in dispute as to whether the County owed the Plaintiffs wages for unpaid commute time, mealtime, and general overtime. Within that motion, the Plaintiffs also argued for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). See Fed. R. Civ. P. 50(a). The district court denied summary judgment and judgment as a matter of law. At the close of the evidence, the Plaintiffs renewed their motion for judgment as a matter of law under Rule 50(a), which the district court again denied. The district court then submitted the case to the jury. The jury returned a verdict in favor of the County on all claims, and the district court entered the final

judgment against the Plaintiffs on June 20, 2008. Plaintiffs failed to renew their motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) within ten days of the entry of judgment. See Fed. R. Civ. P. 50(b). The Plaintiffs appeal the district court's denial of their motion for summary judgment, its denial of their 50(a) motion for judgment as a matter of law, and its issuance and refusal to issue certain jury instructions.

II.

Plaintiffs first argue that the district court erred in denying their motion for summary judgment. This court, however, "will not review a district court's denial of a motion for summary judgment after a trial on the merits." EEOC v. Sw. Bell Tel., L.P., 550 F.3d 704, 708 (8th Cir. 2008); Eaddy v. Yancey, 317 F.3d 914, 916 (8th Cir. 2003) ("Even a cursory review of precedent in this Circuit reveals that we do not review a denial of a summary-judgment motion after a full trial on the merits." (citations omitted)); White Consol. Indus., Inc. v. McGill Mfg. Co., 165 F.3d 1185, 1189 (8th Cir. 1999) ("A denial of summary judgment is interlocutory in nature and is ordinarily not appealable after trial and judgment."). Instead, we have stated that the "proper redress" for a denial of summary judgment following final judgment is "through subsequent motions for judgment as a matter of law . . . and appellate review of those motions" if the district court denies them. White Consol. Indus., 165 F.3d at 1189 (quotation omitted).

As Plaintiffs note, we have, in at least one instance, allowed a party to appeal a district court's denial of summary judgment after final judgment when there were no disputed material facts and "the denial of summary judgment [was] based on the interpretation of a purely legal question." See id. at 1190 (allowing an appeal of a denial of summary judgment in a contracts case because "interpretation of a contract is a question of law for the court to decide") (quotation omitted). But in arguing that this case comes within any such limited exception for "purely legal questions," Plaintiffs mischaracterize their claims. At the time of the motion, the issues were not

purely legal; rather, there were numerous and varied questions of material fact with regard to the compensability of commute-time, mealtime, and other overtime claims. Cf. Skidmore v. Swift & Co., 323 U.S. 134, 136–37 (1944) ("Whether . . .[waiting] time falls within or without the Act is a question of fact to be resolved by appropriate findings of the trial court."); Jarrett v. ERC Props., Inc., 211 F.3d 1078, 1081 (8th Cir. 2000) ("Disputes regarding the nature of an employee's duties are questions of fact . . . ." (citing Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986))); Hultgren v. County of Lancaster, 913 F.2d 498, 504 (8th Cir. 1990) ("Under the FLSA, whether sleep time is work time is a question of fact . . . ." (quotation omitted)). The district court properly submitted the case to the jury for resolution of these issues, and Plaintiffs had the opportunity to litigate their position before that jury. See Metro. Life Ins. Co. v. Golden Triangle, 121 F.3d 351, 354 (8th Cir. 1997). We are thus precluded from considering the district court's denial of summary judgment on appeal.

III.

Plaintiffs further allege that the district court erred in denying their motion for judgment as a matter of law with respect to the drive-time, mealtime, and other overtime compensation claims. See Fed. R. Civ. P. 50(a). This court reviews a "denial of a motion for judgment as a matter of law de novo." Heaton v. The Weitz Co., 534 F.3d 882, 887 (8th Cir. 2008). When a party fails to renew a motion for judgment as a matter of law following entry of judgment under Rule 50(b), however, our review is circumscribed.

Both parties cite Cross v. Cleaver for the proposition that absent a Rule 50(b) motion, this court reviews the district court's denial of a motion for judgment as a matter of law for plain error. See Cross v. Cleaver, 142 F.3d 1059, 1070 (8th Cir. 1998) (quotations omitted) ("[This court] cannot test the sufficiency of the evidence to support the jury's verdict beyond application of the plain error doctrine in order to prevent a manifest miscarriage of justice."). Neither party acknowledges, however,

that the Supreme Court has stated that "when a party fails to file a motion under Rule 50(b), 'there [is] no basis for review of [the party's] sufficiency of the evidence challenge in the Court of Appeals.'" Sw. Bell Tel., L.P., 550 F.3d at 708 (quoting Unitherm Food Sys. v. Swift-Eckrich, Inc., 546 U.S. 394, 407 (2006)). Plaintiffs' arguments on appeal are the same arguments that they made in their Rule 50(a) motion before the district court. Because a Rule 50(a) motion can only prevail if there is no "legally sufficient evidentiary basis to find for the party," each of the arguments that Plaintiffs raise in their motion on appeal is, in effect, a sufficiency-of-the-evidence challenge. See id. at 709. In light of Unitherm and Southwestern Bell, then, because Plaintiffs failed to file a Rule 50(b) motion, we are without the power to consider the district court's denial of the 50(a) on appeal. We thus refrain from addressing the merits of the parties' arguments with regard to whether sufficient evidence supported the jury's verdict on Plaintiffs' drive-time, mealtime, and other overtime compensation claims.

## IV.

Finally, Plaintiffs claim that the district court erred in issuing and failing to issue various instructions to the jury. "When reviewing . . . jury instructions for error, we must consider the instructions in their entirety. Jury instructions are generally committed to the sound discretion of the district judge, and the district judge is entitled to a great deal of deference in his or her formulation . . . . Moreover, a single erroneous instruction does not require reversal if the charge as a whole fairly and adequately submits the issue to the jury." May v. Ark. Forestry Comm'n, 993 F.2d 632, 637 (8th Cir. 1993) (internal citations omitted). Reviewing the jury instructions in this case, we find no error.

A. No Duty to Examine CAD Logs for Payroll Purposes

Plaintiffs claim that the district court erred in instructing the jury from the bench that the County had no legal duty to consult the CAD logs for payroll purposes. They argue that such an instruction precluded them from establishing that the County knew or should have known that they were working overtime.

An employee must be compensated for duties "before and after scheduled hours . . . if the employer knows or has reason to believe the employee is continuing to work and the duties are an integral and indispensable part of the employee's principal work activity." Mumbower v. Callicott, 526 F.2d 1183, 1188 (8th Cir. 1975) (internal citations and quotations omitted). Thus, in order to prevail on their overtime claims, Plaintiffs were required to present evidence that they worked above their scheduled hours without compensation and that the County knew or should have known that they were working overtime. See Reich v. Stewart, 121 F.3d 400, 407 (8th Cir. 1997); Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687–88 (1946), superceded by statute on other grounds, Portal-to-Portal Act of 1947, Pub. L. No. 49-52, 61 Stat. 87, as recognized in Carter v. Panama Canal Co., 463 F.2d 1289, 1293 (D.C. Cir. 1972) (burden of proof).

Because constructive knowledge of overtime work is sufficient to establish liability under the FLSA, if the County, through reasonable diligence, should have acquired knowledge that Plaintiffs were working in excess of their scheduled hours, the jury would have been empowered to find the County liable. See Stewart, 121 F.3d at 406–07. Plaintiffs claim that the heart of their case was that the CAD records provided evidence of the County's constructive knowledge of the Plaintiffs' overtime hours and that by stating that the County had no duty to consult the records, the district court prevented Plaintiffs from proving their case. Access to records indicating that employees were working overtime, however, is not necessarily sufficient to establish constructive knowledge. See Newton v. City of Henderson, 47 F.3d 746, 749 (5th Cir. 1995). And, contrary to Plaintiffs' request, we refuse to find

that the CAD records in this case were an appropriate basis of constructive knowledge such that the instruction was erroneous.

Testimony at trial indicated that while County officials, including the Sheriff's Department payroll office, technically had access to the CAD records, they were not used for payroll purposes. As the County bookkeeper and the County Sheriff testified, the CAD records are only used so that dispatchers know what officers are available to respond to an emergency. They essentially amount to a daily report of officer activity and only are referenced to gain an overview of what types of emergencies occurred during a particular period, as opposed to the schedules of particular officers.

The FLSA's standard for constructive knowledge in the overtime context is whether the County "should have known," not whether it could have known. See Stewart, 121 F.3d at 407. It would not be reasonable to require that the County weed through non-payroll CAD records to determine whether or not its employees were working beyond their scheduled hours. This is particularly true given the fact that the County has an established procedure for overtime claims that Plaintiffs regularly used. See Newton, 47 F.3d at 749 (warning that requiring an employer take additional action would essentially relieve officers of their obligation to follow established overtime-pay procedures). The administrative burden concomitant with requiring the County to reference the CAD logs for the forty-some employees working in the Sheriff's Department each day would be severe, and the Sheriff even testified that the County would be required to hire additional personnel to review the CAD logs for payroll purposes.

This case is distinguishable from other instances where courts have found constructive knowledge based on an employer's access to non-payroll records. There is no indication here that the officers were discouraged from submitting overtime slips or that submitted slips went unpaid. See Brennan v. Gen. Motors Acceptance Corp., 482 F.2d 825, 827 (5th Cir. 1973). Nor is there evidence that the County was on

notice that hours were being regularly under-reported or that it should have been monitoring hours more closely.  See Reich v. Ala. Dept. of Conserv. & Natural Res., 28 F.3d 1076, 1083–84 (11th Cir. 1994) (finding constructive knowledge when the supervisors were "specifically instructed" to "closely monitor" hours to ensure compliance with policy and when the employer knew that the monitoring was not being accomplished based on a previous study).

We do not foreclose the possibility that another case may lend itself to a finding that access to records would provide constructive knowledge of unpaid overtime work.  And, in such a case, an instruction similar to that which the district court gave may be erroneous.  Given the particular circumstances here, however, the district court correctly determined that the CAD logs could not serve as a basis upon which to find that the County had constructive knowledge of unpaid overtime.  To permit such an instruction would require that the County engage in actions beyond the "reasonable diligence" the law requires of employers when determining whether their employees are working overtime.  See Stewart, 121 F.3d at 407.  As such, the district court's instruction was proper.[2]

B. Burden of Proof As to Mealtime Compensation

Plaintiffs also appeal the district court's instruction that assigned Plaintiffs the burden of proof to show that they were engaged in conduct "primarily for the benefit of the employer" and that their mealtimes were thus compensable.  See Henson v. Pulaski County Sheriff Dept., 6 F.3d 531, 534 (8th Cir. 1993) (indicating that whether

---

[2] Notably, the district court did not preclude Plaintiffs from discussing the CAD logs for other relevant issues, such as proving when Plaintiffs arrived and left work. The court's statement to the jury was as follows: "Woodbury County has no legal obligation to consult CAD logs in conjunction with the processing of payroll for its employees, and that was testified to by [the bookkeeper] and others [and] there'll be no more questions about CAD logs in conjunction with payroll."

an employee is entitled to mealtime compensation depends on whether that time was spent "predominantly for the benefit of the employer" or whether the employee was able to use that time effectively for his or her own purposes). Plaintiffs argue that because mealtimes amount to an "exemption" from compensation under the Act, it was the County's burden to show that Plaintiffs had a bona fide mealtime and engaged in no work. We find Plaintiffs' argument unavailing.

The Supreme Court has indicated that the "general rule [is] that the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof." Corning Glass Works v. Brennan, 417 U.S. 188, 196–97 (1974). While we have never before determined who bears the burden in cases of disputed mealtime compensation, we are not persuaded that this case implicates an "exemption" within the meaning of the FLSA. A claim for non-payment of work during an established mealtime is analytically similar to an unpaid overtime claim, not an exemption claim. See id. (citing various exemption claims). The gravamen of Plaintiffs' complaint is that they performed "work" during mealtimes, that the work amounted to overtime because it was in addition to their already-scheduled, eight-hour shift, and the work during these mealtimes went uncompensated. By requiring Plaintiffs to show that their actions were "primarily for the benefit of the employer," the jury instruction simply commanded that Plaintiffs show that they actually preformed "work" for a time that exceeded the hours of their compensable workday.

In essence, a claim for unpaid mealtime work is no different than other overtime claims where it is the plaintiff's burden to show (1) that the plaintiff has performed compensable work and (2) the number of hours for which the plaintiff has not been properly paid. Cf. Goldberg v. Kickapoo Prairie Broad. Co., 288 F.2d 778, 784 (8th Cir. 1961); Anderson, 328 U.S. at 687–88 (stating that each employee must prove "that he has in fact performed work for which he was improperly compensated . . . and produce[] sufficient evidence to show the amount and extent of that work as a matter

-11-

of just and reasonable inference."); see also Aamold v. United States, 39 Fed. Cl. 735, 741 (Fed. Cl. 1997) (indicating that the burden is on the employee to show that his or her mealtime was compensable); Hill v. United States, 751 F.2d 810, 814–15 (6th Cir. 1984) (discussing how mealtime compensation was not warranted where the employee failed to show that the employee spent mealtimes predominantly for the employer's benefit, was not able to enjoy the mealtime adequately or comfortably, or was engaged in the performance of substantial duties).

Plaintiffs cite Fourth and Fifth Circuit case law as support for the proposition that the County bears the burden because mealtimes qualify as an "exemption" within the meaning of the FLSA. See Roy v. County of Lexington, 141 F.3d 533, 544 (4th Cir. 1998); Bernard v. IBP, Inc. of Neb., 154 F.3d 259, 265 (5th Cir. 1998) (citing Roy, 141 F.3d at 544). We are not persuaded, however, by those courts' classifications of mealtime as an "exemption" from compensation. The statutory default for mealtimes is that they are non-compensable because they do not constitute "work" under the FLSA. See 29 C.F.R. § 785.19. Mealtimes, then, are not exempt from compensation, but rather they are not compensable in the first instance. Furthermore, requiring the County to show that Plaintiffs' established mealtimes were not, in fact, non-compensable would be entirely inefficient. It is Plaintiffs who are in the best positions to prove that their actions during their scheduled mealtimes were for the benefit of the employer and thus not part of a bona fide meal period. To require that the County prove a negative—that an employee was not performing "work" during a time reserved for meals—would perversely incentivize employers to keep closer tabs on employees during their off-duty time.

In conclusion, we believe that under the FLSA, the employee bears the burden to show that his or her mealtimes were compensable work. The district court thus did not err in its jury instruction.

C. Miscellaneous Jury Instructions

Plaintiffs further argue that the district court erred in refusing to give jury instructions that highlighted the County's duty to ensure that the officers refrained from performing overtime work and that the County had an obligation to keep records of the time its employees worked. We disagree. Provided that the "charge as a whole fairly and adequately submits the issue to the jury," we will find no reversible error. See May, 993 F.2d at 637. We find no reason to disturb the refusal of the court to provide such instructions as they were largely repetitive in light of the other instructions regarding the effect of the County's knowledge of its employees' overtime and the County's general obligations under the FLSA. We find no reversible error with the district court's instructions.

V.

For the foregoing reasons, we affirm the decision of the district court.

_____