# United States Court of Appeals

### For the Eighth Circuit

_____

No. 20-2054

_____

Linda Rapp; Craig Shumway; Karen Shumway

*Plaintiffs - Appellants*

v.

Network of Community Options, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Batesville

_____

Submitted: April 13, 2021
Filed: July 8, 2021

_____

Before LOKEN, WOLLMAN, and STRAS, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Linda Rapp and Craig and Karen Shumway brought this Fair Labor Standards
Act (FLSA) case against their employer, Network of Community Options, Inc.

(NCO). The district court[1] granted summary judgment in favor of NCO after concluding that Rapp and the Shumways had failed to put forth evidence establishing that they worked overtime hours and that NCO had constructive knowledge of their claimed overtime hours. We affirm.

## I. Background

Rapp and the Shumways are employed by NCO as direct support professionals. Direct support professionals provide support and assistance to clients who are developmentally disabled. Rapp's client is her adult son, C.R., who resides in her home. The Shumways' client, J.C., resides in their home and is the ward of Karen's mother.

The relationships between NCO and C.R. and J.C. respectively are described in each client's plan of care. C.R.'s plan of care states that he is to receive forty hours of assistance per week from his direct support professional, Rapp. Rapp also provides "personal care" to C.R. for two hours each day in her separate role as an employee of White River Area on Aging. J.C.'s plan of care sets forth that he is to receive a total of 112 hours of assistance per week from a variety of direct support professionals. According to J.C.'s plan of care, Craig and Karen each provide J.C. forty hours of assistance per week as direct support professionals.

Rapp and the Shumways filed suit, alleging that they had worked overtime hours for NCO but not been paid.[2] Rapp and the Shumways asserted that they were on duty around-the-clock to care for their NCO clients because the clients lived in

---

[1]The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas.

[2]The parties agree that Rapp and the Shumways are non-exempt employees under the FLSA who thereby qualify for time-and-a-half overtime pay.

their homes. As relevant to this appeal, Rapp sought ninety-eight hours of weekly overtime pay.[3] Craig and Karen each sought twenty-eight hours of weekly overtime pay.[4] In granting summary judgment in favor of NCO, the district court also concluded that Rapp and the Shumways were not entitled to the benefit of a three-year statute of limitations for willful violations under 29 U.S.C. § 255(a) or to liquidated damages under 29 U.S.C. § 216(b), see id. § 260.

## II. Analysis

We review *de novo* the district court's grant of summary judgment. Holaway v. Stratasys, Inc., 771 F.3d 1057, 1058 (8th Cir. 2014). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although at summary judgment we take the record in the light most favorable to the nonmoving party, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Holaway, 771 F.3d at 1059 (quoting Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)).

The FLSA requires that covered employees receive at least one and one-half times their regular hourly rate for hours worked over forty per week. 29 U.S.C. § 207(a)(1). To establish a FLSA claim for unpaid overtime, a plaintiff must prove "(1) that the plaintiff has performed compensable work and (2) the

---

[3]Rapp calculated her overtime hours by multiplying 24 hours times 7 days (168 hours), then subtracting 40 hours of scheduled NCO work, 14 hours of paid personal care work for White River Area on Aging, and 16 hours of personal time—during which she allegedly engages in activities like showering and grocery shopping.

[4]Craig and Karen calculated their overtime hours by multiplying 24 hours times 7 days (168 hours), then subtracting the 112 NCO-paid plan of care hours. They then divided that total—56—in half to arrive at 28 hours of overtime each.

number of hours for which the plaintiff has not been properly paid." Hertz v. Woodbury Cnty., 566 F.3d 775, 783 (8th Cir. 2009). Even if an employer did not request the overtime hours worked, the employee "must be compensated if the employer knows or has reason to believe the employee is continuing to work and the duties are an integral and indispensable part of the employee's principal work activity." Mumbower v. Callicott, 526 F.2d 1183, 1188 (8th Cir. 1975) (internal citations and quotation marks omitted). Thus, the employee must show that the employer had actual or constructive knowledge—not merely that the employer "could have known." Hertz, 566 F.3d at 782.

We conclude that Rapp's unpaid overtime claim fails to survive summary judgment. Rapp has not provided evidence that she in fact remained at home performing compensable work for ninety-eight hours per week, nor has she identified specific hours of the week during which that overtime occurred. See Holaway, 771 F.3d at 1060 (concluding, on an even more lenient standard, that the plaintiff had "failed to put forth any evidence regarding specific weeks where he worked beyond forty hours"). Rapp has also failed to provide a meaningful explanation of how she arrived at her estimate of sixteen hours of non-working personal time per week. See id.

Rapp contends that she was constantly on duty to care for C.R. and thus prevented from engaging in private pursuits—except for the sixteen hours of personal time per week. To determine whether on-duty waiting or sleeping time is working time, we consider a number of factors, including

> the number of consecutive hours the employee is subject to call without being required to perform active work, the extent to which he is free to engage in personal activities during periods of idleness, whether he is required to remain on or about the premises during such time, or whether he can leave word where he may be reached in the event of a call and is not required to remain in any particular place.

Cent. Mo. Tel. Co. v. Conwell, 170 F.2d 641, 646 (8th Cir. 1948).

-4-

The record evidence belies Rapp's portrayal of her direct support professional role. Rapp testified that her role involved working with C.R. on the goals and objectives set forth in his plan of care. During the time period at issue, C.R.'s set-forth goals and objectives included initiating daily communication with peers and family members, learning to use buttons and zippers to dress himself, and exercising with assistance at least twice daily. Rapp provides no evidence that her direct support professional role included "wait[ing] for something to happen."[5] See Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944). When Rapp's shift ended, her work for NCO was complete and she was free to "engage in normal private pursuits." See 29 C.F.R. § 785.23 (2019). Rapp points to no evidence that NCO was engaged to provide around-the-clock services or that her job with NCO included being generally "on call" or "on duty" at all times simply because C.R. lived in her home. We therefore conclude that Rapp has not provided evidence that would allow a reasonable jury to find that she was working nearly twenty-four hours per day, seven days a week, in her role as a direct support professional for NCO.

Moreover, even if Rapp had established that she performed overtime work for which she was not paid, she has not established that NCO had actual or constructive knowledge thereof. Rapp testified that she asked if she could work additional waiver hours and that NCO responded that overtime was neither in the budget nor in C.R.'s allotted plan of care. This discussion involved only the question whether Rapp might work additional hours in the future, not the alleged fact that Rapp was already working those overtime hours. We therefore conclude that this conversation was insufficient to place NCO on notice that Rapp was in fact working ninety-eight

[5]Indeed, Rapp provided personal care—rather than assistance with goals and objectives—to C.R. for two hours each morning in a separate capacity, as a White River Area on Aging employee. Thus, Rapp's two caregiver roles—one employed by NCO and one employed by White River—were intended to accomplish distinct assistive tasks.

overtime hours each week. Cf. Hertz, 566 F.3d at 782. Nor does the fact that when "something occurs in the middle of the night," direct support professionals are expected to assist mean that NCO knew its employees were remaining at home, on-duty nearly twenty-four hours a day.

We likewise conclude that the Shumways' unpaid overtime claims fail to survive summary judgment. The record contains only a single week's records of Craig's work with J.C. These records include Craig's daily comments on J.C.'s status. They also state J.C.'s goals and list Craig's daily time-in and -out as well as "Total Hours Claimed" for the week. Craig does not provide a corresponding pay stub or other documentation indicating the number of hours for which he was paid in that week or any other. The Shumways provide no other time sheets, payroll records, or other contemporary files indicating hours worked or amount paid in any given week. Nor do they offer any testimony identifying specific hours worked or tasks completed. See Holaway, 771 F.3d at 1060 ("Holaway provided only vague testimony and failed to reference specific days and hours worked. This failure includes a failure by Holaway to check his hours worked against any business records kept by Stratasys."). The Shumways instead point to conjectural, counsel-created spreadsheets that purportedly list daily working hours as recorded on time sheets as well as weekly hours of overtime worked. These spreadsheets are not based on record evidence, however. Although the spreadsheets list some specific days, the Shumways have not "specifically account[ed] for the hours worked" and "ha[ve] also failed to provide a meaningful explanation of how [they] arrived at [their] final estimate[s]." See id. at 1059–60. Because the Shumways have failed to provide evidence of the pay they received, we cannot determine whether NCO failed to pay overtime that was due and owing. Although Craig testified that he was "always on duty with [J.C.] 24/7, 365," we cannot conclude on this statement alone that the Shumways have created a genuine dispute of material fact about unpaid overtime. The record evidence thus "provides no details which would allow a jury to determine

[the Shumways] worked beyond forty hours in any specific week of [their] employment." See id. at 1060.

Because we conclude that there is no genuine dispute of material fact about whether Rapp or the Shumways in fact worked compensable overtime, we need not reach the questions whether their claims are foreclosed by the statute of limitations or whether they are entitled to liquidated damages.

Conclusion

The judgment is affirmed.

_____