# United States Court of Appeals

### For the Eighth Circuit

---

No. 23-3683

---

Vince Micone,[1] Acting Secretary of Labor, U.S. Department of Labor

*Plaintiff - Appellant*

v.

Levering Regional Health Care Center, L.LC.; Reliant Care Management
Company, L.L.C.

*Defendants - Appellees*

Richard J. Destefane

*Defendant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 24, 2024
Filed: March 26, 2025

_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.

_____

---

[1]Vince Micone is now Acting Secretary of Labor, and is substituted as
appellant pursuant to Federal Rule of Appellate Procedure 43(c).

KELLY, Circuit Judge.

Vince Micone, the Acting Secretary of the United States Department of Labor (Secretary), brought suit against Levering Regional Health Care Center, L.LC. and Reliant Care Management Company, L.L.C. (collectively, Levering) for violating the Fair Labor Standards Act (FLSA). The suit alleged that Levering deducted 30 minutes of pay for employees' meal breaks, even though it knew or should have known its employees routinely worked through those breaks. The district court granted Levering's motion for summary judgment. We reverse and remand.

I.

Reliant Care Management Company is a healthcare management company that manages Levering Regional Health Care Center, a residential care facility. Levering employs healthcare workers in its nursing department to provide direct care for its in-patient residents. These workers include nurses, certified medical technicians, quality-of-life advocates, hall monitors, and residential care coordinators.

During all relevant times, Levering automatically deducted 30 minutes from nursing-department employees' time sheets for a lunch break every day. At the same time, Levering had an unwritten policy (the Time Sheet Policy) in place for employees who missed their lunch so that Levering could pay those who had to work through the break. The Time Sheet Policy required employees to submit a Temporary Time Sheet, signed by their supervisor, indicating that they had worked during their lunch break.

From March 2020 through January 2021, Anne Thomas, an investigator with the United States Department of Labor, Wage, and Hour Division, investigated Levering for potential violations of the FLSA. Thomas's investigation focused on the period from February 13, 2018, to February 12, 2020 (the audit period). During her investigation, Thomas interviewed more than 40 Levering employees, most of

whom were employed in the nursing department. Many of these employees told Thomas that they either never received a lunch break or frequently had their lunch breaks interrupted. More than a dozen employees told Thomas that it was impossible for them, and others, to take lunch breaks because there was no one on the floor who could relieve them from their duties. Other employees told Thomas that they either never or rarely got a lunch break because they simply did not have time due to the amount of work they had to complete.

In these interviews, Thomas also received conflicting accounts about workers' knowledge of the Time Sheet Policy. Of the nineteen employees Thomas asked about the policy, five of them (including one employee who supervised all nursing staff on the floor) did not know about the Temporary Time Sheets, and fourteen of them did.

Based on Thomas's investigation, the Secretary concluded that Levering had violated the FLSA by failing to pay its employees for missed lunch breaks. Thereafter, the Secretary filed the instant suit. During discovery, the Secretary requested that Levering produce all Temporary Time Sheets that its employees had submitted. In response, Levering produced 883 pages of Temporary Time Sheets submitted between August 19, 2022, and January 3, 2023, but it failed to produce a single Temporary Time Sheet that was submitted during the two-year audit period.

After the close of discovery, Levering moved for summary judgment. Relevant to this appeal, Levering argued it was not liable for unpaid overtime wages because it did not have actual or constructive knowledge that its employees worked during lunch breaks and were not paid for that work. The district court granted the motion for two primary reasons. First, relying heavily on Levering's Time Sheet Policy and employees' failure to use it, the district court concluded that no reasonable jury could find Levering had actual or constructive knowledge of its employees' overtime hours. Second, even if Levering knew or should have known

-3-

of the employees' overtime work, the district court found that the Secretary failed to adequately establish the amount of overtime Levering owed.[2] The Secretary appeals.

## II.

We review a district court's grant of summary judgment de novo. Avenoso v. Reliance Standard Life Ins. Co., 19 F.4th 1020, 1024 (8th Cir. 2021). "Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Fed. R. Civ. P. 56(c)(2)). A genuine dispute of fact is one in which a reasonable jury could return a verdict in favor of the nonmoving party. Cottrell v. Am. Fam. Mut. Ins. Co., 930 F.3d 969, 972 (8th Cir. 2019). In deciding summary judgment, we must view the record in the light most favorable to the nonmoving party, id. at 971, and draw all reasonable inferences in the nonmoving party's favor, see Gelschus v. Hogen, 47 F.4th 679, 688 (8th Cir. 2022).

"For non-exempt employees, the FLSA prohibits the employment of any person 'for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.'" Holaway v. Stratasys, Inc., 771 F.3d 1057, 1059 (8th Cir. 2014) (quoting 29 U.S.C. § 207(a)(1)). To "employ" for purposes of the FLSA means "to suffer or permit to work." Walsh v. Alpha & Omega USA, Inc., 39 F.4th 1078, 1081–82 (8th Cir. 2022) (citing 29 U.S.C. § 203(g)).

---

[2]The district court declined to consider certain evidence it found to be inadmissible hearsay within hearsay. We need not address these evidentiary rulings because, for reasons explained below, the record contains sufficient evidence to preclude summary judgment without considering the purported hearsay.

We treat an employee's claim for unpaid mealtime the same as we do a claim for overtime pay. See Hertz v. Woodbury Cnty., 566 F.3d 775, 783 (8th Cir. 2009). To succeed on either, the Secretary must prove "(1) that the [employee] has performed compensable work and (2) the number of hours for which the [employee] has not been properly paid." Id.; see also Rapp v. Network of Cmty. Options, Inc., 3 F.4th 1084, 1087 (8th Cir. 2021) (applying Hertz test to an overtime case).

We address each requirement of the Secretary's claim in turn.

A.

Under the FLSA, an employee's mealtimes ordinarily do not constitute "work," so the time employees spend eating is generally non-compensable. See Hertz, 566 F.3d at 784. But a mealtime can constitute compensable work if the employee spends the time predominantly for the benefit of the employer, see Henson v. Pulaski Cnty. Sheriff Dep't, 6 F.3d 531, 534 (8th Cir. 1993), and the employer knew or should have known its employees performed such work, Hertz, 566 F.3d at 781. It does not matter whether the employer prohibited the work. Id.; Reich v. Stewart, 121 F.3d 400, 407 (8th Cir. 1997) ("Even if [the employer] had prohibited [the employee's] overtime work . . . [the employer] could not avoid liability under the FLSA because he had actual and constructive knowledge that [the employee] worked overtime."); see also 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time."). Nor does it matter whether an employee seeks compensation for her work. See Stewart, 121 F.3d at 407 (explaining that employees "cannot waive [their] entitlement to FLSA benefits"); see also Holzapfel v. Town of Newburgh, 145 F.3d 516, 524 (2d Cir. 1998) ("[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation even where the employee fails to claim overtime hours."). All that matters is whether an employer knew or should have known of the employee's work: if either, the employer must compensate the employee. See Rapp, 3 F.4th at 1087; Hertz, 566 F.3d at 781.

Constructive knowledge is enough to prove an employer's liability under the FLSA. Hertz, 566 F.3d at 781. An employer has constructive knowledge "if . . . through reasonable diligence, [it] should have acquired knowledge that [the employees] were working in excess of their scheduled hours." Id. The key inquiry is not whether the employer could have discovered the overtime work, but whether the employer should have. See id. at 782.

One way an employer can show it has exercised reasonable diligence in ascertaining employees' overtime work is by establishing a reasonable process for an employee to report it. See id. If employees fail to follow that process, then an employer ordinarily is not deemed to have constructive knowledge of overtime work. See id.; see also Perry v. City of N.Y., 78 F.4th 503, 513 (2d Cir. 2023); Fairchild v. All Am. Check Cashing, Inc., 815 F.3d 959, 965 (5th Cir. 2016); White v. Baptist Mem'l Health Care Corp., 699 F.3d 869, 876 (6th Cir. 2012); Allen v. City of Chi., 865 F.3d 936, 938–39 (7th Cir. 2017); Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413, 414–15 (9th Cir. 1981).

But the mere existence of a policy or process for reporting overtime work is not dispositive. An employer's process must be reasonable, which at a minimum requires employees to know of the policy and how to use it. See, e.g., Craig v. Bridges Bros. Trucking LLC, 823 F.3d 382, 390 (6th Cir. 2016) (finding summary judgment inappropriate because the record contained numerous factual disputes about whether the employer's established protocols were reasonable in the first instance based on the fact that it was "unclear whether [the employee] even knew she was allowed to petition for overtime compensation at all"); City of Chi., 865 F.3d at 946 n.5 ("One can certainly argue that an employer has not created a reasonable reporting system—has not been reasonably diligent—if its employees do not know when to use that system."). Similarly, if the employer prevented employees from using the policy, pressured employees not to use the policy, or in some way discouraged them from using the policy, an otherwise reasonable policy does not negate constructive knowledge. See, e.g., White, 699 F.3d at 876 (citing cases that "involved situations where the employer prevented the employees from reporting

overtime"); Perry, 78 F.4th at 513 n.9 ("[R]equiring overtime reporting will not protect an employer who then interferes with employees' ability to report their work, such as by surreptitiously deleting overtime requests, punishing workers who ask for overtime pay, or otherwise discouraging employees from reporting."); cf. Hertz, 566 F.3d at 782 ("There is no indication here that the officers were discouraged from submitting overtime slips or that submitted slips went unpaid.").

Here, the record indisputably shows both that Levering established the Temporary Time Sheet Policy, and that none of Levering's employees used it during the audit period. But these facts do not necessarily mean Levering lacked constructive knowledge under the circumstances. Notably, Levering failed to produce a single employee request under the Time Sheet Policy that was submitted during the two-year audit period. Yet, it produced 883 pages of Temporary Time Sheets submitted by employees for uncompensated work after the audit period, a four-month span between August 19, 2022, and January 3, 2023. A reasonable jury could find that the absence of any time sheets submitted during the two-year audit period, contrasted with the over 800 time sheets submitted in a four-month period two years later, is evidence that Levering failed to effectively communicate its policy—which did not change—to employees during the audit period. Such an inference is further supported by the evidence that several employees, including at least one supervisor, did not know about the Temporary Time Sheets at all.

Levering attempts to downplay the significance of the difference in the number of time sheets submitted during the two time periods. First, Levering suggests that COVID-19 explains it, arguing that employees were working harder during the pandemic and thus were more likely to use the policy during the four-month period than the two-year audit period. Second, at oral argument, Levering suggested that it simply "lost" the Temporary Time Sheets that would have corresponded to the audit period. While these arguments may be appropriate for the jury, they fail at summary judgment because they inappropriately draw inferences in favor of Levering rather than in favor of the Secretary. See Gelschus, 47 F.4th at 688. Similarly, Levering asserts that it informed employees of the Temporary Time

Sheet Policy at orientation and in-service training. But the Secretary presented evidence that some of Levering's employees, including a supervisor, stated they were completely unaware of the Temporary Time Sheets. And to accept Levering's assertion that any employee who did not know about the policy simply did not remember, or was not present for, the training again fails to draw inferences in favor of the nonmoving party—the Secretary. Instead, these are fact disputes concerning the reasonableness of Levering's policy that cannot be resolved at this stage of the proceedings.[3]

## B.

To establish an FLSA claim, plaintiffs must also prove "the number of hours for which [they] ha[ve] not been properly paid." Rapp, 3 F.4th at 1087. The FLSA requires employers to maintain accurate records, and this obligation cannot be delegated to employees. See Holaway, 771 F.3d at 1059; see also 29 U.S.C. § 211(c) ("Every employer . . . shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him[.]"). If an employer fulfills this obligation, then the employee can meet her burden by securing production of such records. See Fast v. Applebee's Int'l, Inc., 638 F.3d 872, 882 (8th Cir. 2011). But if an employer fails to maintain adequate records, employees are "not denied recovery under the FLSA

---

[3]Levering argues that "the proper test is not whether Levering should have known that its employees were working during their meal periods, the test is whether Levering should have known that its employees were working through their meal periods without being paid." Even assuming an employer's knowledge requirement extends both to the overtime work and to the pay, see Perry, 78 F.4th at 515–16 (holding that "knowledge of non-payment is irrelevant to FLSA liability," and that the relevant knowledge is of the claimed overtime work), in this case, the two go hand in hand. Levering automatically deducted 30 minutes for lunch breaks. Therefore, because a reasonable jury could find Levering knew or should have known that none of its employees ever submitted a Temporary Time Sheet to get reimbursed during the audit period despite working through lunch, a reasonable jury could find Levering knew or should have known that it was not paying its employees for time spent working during the automatically deducted lunch breaks.

simply because they cannot prove the precise extent of their uncompensated work." Holaway, 771 F.3d at 1059. Instead, the employee must present "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 688 (1946), superseded by statute on other grounds, Portal-to-Portal Act of 1947, Pub. L. No. 49-52, § 5, 61 Stat. 84, 87 (May 14, 1947) (codified at 29 U.S.C. § 216(b)).

On appeal, Levering argues the Secretary cannot meet its burden to prove the amount and extent of overtime it asserts the employees worked. Levering points out that it maintained payroll records showing the hours worked by its nursing employees. But if a jury finds that employees worked overtime during lunch breaks, then Levering's records—which automatically deducted 30 minutes from the employees' lunch breaks—would be inaccurate. If Levering failed to accurately maintain records, its employees do not need to prove the precise extent of their uncompensated work to recover under the FLSA. See Holaway, 771 F.3d at 1059; see also 29 U.S.C. § 211(c). Levering also asserts that the Secretary has the burden of "com[ing] forward with evidence of the specific amount and extent of [the employees'] overtime work." But the Secretary does not need to show with exactitude how much overtime Levering owes. See Holaway, 771 F.3d at 1059. Rather, the Secretary only needs to submit "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. (quoting Carmody v. Kan. City Bd. of Police Comm'rs, 713 F.3d 401, 406 (8th Cir. 2013)).

Viewing the record in the light most favorable to the nonmoving party, the Secretary has met this burden. Thomas relied on her interviews with the employees and reviewed their time sheets to estimate the amount of overtime they worked. Thomas cross-referenced this information with Levering's payroll records to estimate the total amount of overtime wages owed. The record supports Thomas's estimations. Over a dozen of Levering's employees told Thomas that because they were often the only ones working on the floor, they could not leave to take a lunch break. Levering counters that any staffing issues it had during the COVID-19 pandemic are not probative as to staffing during the audit period. But Levering

received more than 800 Temporary Time Sheet requests in a roughly four-month period from August 2022 to January 2023, a time period well after the height of COVID-19. A reasonable jury could find this timing indicated there were staffing shortages independent of the impact of COVID-19. Levering also argues that the Secretary failed to determine the extent to which the employees' lunches were interrupted. True, not every employee who was interviewed described the exact amount of time they missed during the lunch breaks. But some of them unequivocally stated they never got a lunch break. We conclude the Secretary met his burden to show the amount and extent of the overtime work as a matter of just and reasonable inference. Cf. Holaway, 771 F.3d at 1059 (concluding that employee who "put forth contradictory and bare assertions of his overtime hours worked" and "failed to provide a meaningful explanation of how he arrived at his final estimate" did not "meet even the relaxed evidentiary standard").

## III.

We reverse the district court's grant of summary judgment to Levering and remand for further proceedings.

GRASZ, Circuit Judge, dissenting.

I respectfully dissent from the court's opinion. While I agree that the mere existence of a policy or process for reporting overtime work is not dispositive as to whether an employer lacks constructive knowledge of overtime work, I believe the Secretary failed to create a genuine dispute of material fact as to whether Levering had a reasonable policy in place. The court reaches the opposite conclusion because it doubts whether Levering effectively communicated its policy. However, the relevant inquiry concerning the reasonableness of an employer's policy is not whether an employer effectively communicated its policy to its employees. Rather, the pertinent inquiry is whether employees knew of the policy and when to use it. See, e.g., Allen v. City of Chicago, 865 F.3d 936, 946 n.5 (7th Cir. 2017); Craig v. Bridges Bros. Trucking LLC, 823 F.3d 382, 390 (6th Cir. 2016); White v. Baptist

-10-

Mem'l Health Care Corp., 699 F.3d 869, 876–77 (6th Cir. 2012) (collecting cases explaining an otherwise reasonable policy does not negate constructive knowledge when the employer prevents or discourages employees from reporting overtime).

Levering presented evidence its employees knew of the policy and when to use it. In fact, employee interview evidence showed that of the nineteen employees asked about the policy regarding compensation for overtime work, fourteen employees were aware of it. The Secretary was then required to submit evidence creating a genuine dispute of material fact demonstrating Levering's employees did not know of the policy and when to use it. See Oien v. Home Depot U.S.A., Inc., 69 F.4th 487, 490 (8th Cir. 2023). The court concludes a "reasonable jury could find that the absence of any time sheets submitted during the two-year audit period . . . is evidence that Levering failed to effectively communicate its policy," ante at 7, but the Secretary did not present any evidence that Levering otherwise "surreptitiously" deleted or destroyed "overtime requests," see Perry v. City of New York, 78 F.4th 502, 513 n.9 (2d Cir. 2023). And evidence that only some employees did not know about the Temporary Time Sheets is insufficient to survive summary judgment in light of the evidence presented by Levering. See ante, at 7–8. Therefore, the Secretary failed to create a genuine dispute of material fact as to whether the employees knew of the policy and when to use it. See Walz v. Ameriprise Fin., Inc., 779 F.3d 842, 844 (8th Cir. 2015) (explaining a "non-moving party receives the benefit of all reasonable inferences supported by the evidence, but has the obligation to come forward with specific facts showing that there is a genuine issue for trial" and failing "to make a showing sufficient to establish the existence of an element essential to that party's case . . . necessarily renders all other facts immaterial" (first quoting B.M. ex rel. Miller v. S. Callaway R-II Sch. Dist., 732 F.3d 882, 886 (8th Cir. 2013); and then quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986))).

Thus, I agree with the district court that the Secretary failed to establish Levering had actual or constructive knowledge of overtime work, and I would affirm the judgment of the district court.

_____