*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-CV-114


MARYAM ASHRAFI, APPELLANT,

V.

LEONARDO DANIEL FERNANDEZ, APPELLEE.


Appeal from the Superior Court
of the District of Columbia
(CAB-3623-14)

(Hon. Maurice A. Ross, Trial Judge)

(Submitted December 20, 2016                    Decided September 6, 2018)

*Mark F. Werblood* for appellant.

*B. Marian Chou* for appellee.

Before EASTERLY, *Associate Judge*, and WASHINGTON[*] and FERREN, *Senior Judges*.

---

[*] Judge Washington was Chief Judge at the time of argument. His status changed to Senior Judge on March 20, 2017.

EASTERLY, *Associate Judge*: Appellant Maryam Ashrafi sued appellee Leonardo Daniel Fernandez, her former boyfriend, for breach of an oral contract to repay a $7500 loan she made to him with the understanding that it would help him pay for his cancer treatment. To prove her case at her bench trial, Ms. Ashrafi testified about her oral agreement with Mr. Fernandez and submitted as exhibits bank records showing a withdrawal of $7500 and text messages with Mr. Fernandez about a transfer to him in the same amount. Mr. Fernandez testified in his own defense and denied receiving any money from Ms. Ashrafi, discussing a loan with her, having cancer, or telling her that he had cancer. The trial court issued its verdict via a written order consisting of "findings of fact"—better described as a recitation of witness testimony—and "conclusions of law," in which it determined that Ms. Ashrafi had "not carr[ied] her burden of establishing a contractual relationship between the parties." On appeal Ms. Ashrafi argues the trial court erred (1) "by not following its [p]retrial [o]rder" which identified Mr. Fernandez's defenses and did not include a failure-to-prove-the-elements-of-a-contract argument, (2) by failing to assess Mr. Fernandez's credibility after he was impeached with a prior conviction for petty larceny; and (3) by "determining that [Ms. Ashrafi] did not present any documentary evidence and [by] not addressing [her] nine (9) exhibits admitted into evidence." For the reasons discussed below,

we agree that the trial court's judgment must be vacated, and we remand the case for further consideration consistent with this opinion.

We quickly dispense with Ms. Ashrafi's first argument that the trial court erred by considering whether she had proved the elements of an enforceable oral contract when the legal insufficiency of her evidence was not specifically identified either in Mr. Fernandez's Answer or in the pretrial order as one of his defenses (instead he disclaimed ever receiving any money from Ms. Ashrafi). We review this legal argument de novo, *Strauss v. NewMarket Global Consulting Grp.*, 5 A.3d 1027, 1032 (D.C. 2010), and reject it. Regardless of the defenses raised by Mr. Fernandez, Ms. Ashrafi, as the plaintiff, bore the burden to prove her breach of contract claim.[1] *Id.* at 1033 ("The party asserting the existence of the oral contract has the burden of proving that an enforceable agreement exists."). As the court acknowledged in its Findings of Fact and Conclusions of Law, the elements of an oral contract are (1) an agreement to all material terms and (2) intent of the parties

---

[1] To the extent that Ms. Ashrafi is arguing that Mr. Fernandez waived any challenge to her failure to state a claim by not raising it pre-trial as a defense, this argument fails. See *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 507 (2006) ("Under Rule 12(h)(2), th[e] objection [failure to state a claim upon which relief can be granted] endures up to, but not beyond, trial on the merits: a defense of failure to state a claim upon which relief can be granted may be made in any pleading or by motion for judgment on the pleadings, or at the trial on the merits.") (internal quotation marks and ellipses omitted). *Accord*, Super. Ct. Civ. R. 12 (h).

to be bound. Order at 5 (quoting *EastBanc, Inc. v. Georgetown Park Associates, II, L.P.*, 940 A.2d 996, 1002 (D.C. 2008)). *See also New Econ. Capital, LLC v. New Mkts. Capital Grp.*, 881 A.2d 1087, 1094 (D.C. 2005) ("[T]he alleged oral agreement must meet the dual requirements of intent and completeness.") (internal citations, brackets, and quotation marks omitted). The court correctly understood that it was obligated to assess whether Ms. Ashrafi had proved the existence of an oral contract. Thus, the court did not err when it analyzed whether there was, in fact, an enforceable oral contract between the parties.

We are troubled, however, by the court's determination that Ms. Ashrafi did not prove the existence of such a contract. Reading the trial court's final order, it is difficult to understand the basis on which the court ruled. *See Wright v. Hodges*, 681 A.2d 1102, 1105 (D.C. 1996) (noting that "[u]nder Super. Ct. Civ. R. 52(a), the trial court in a nonjury case is required to state sufficient findings of fact and conclusions of law to permit meaningful appellate review"). It may be that the court concluded that, even crediting Ms. Ashrafi's testimony, she failed to prove the elements of an oral contract by the requisite preponderance of the evidence.[2]

---

[2] *See Myrick v. Nat'l Sav. & Tr. Co.*, 268 A.2d 526, 527 (D.C. 1970) ("In a civil case, the burden of proof required is a fair preponderance of the evidence."); *see also Summerbell v. Elgin Nat'l Watch Co.*, 215 F.2d 323, 323 (D.C. Cir. 1954) (affirming trial court ruling that plaintiff "ha[d] not established by a preponderance

(continued…)

Or it may be that the court made factual findings adverse to Ms. Ashrafi that led it to conclude that her narrative addressing these elements was not credible. Either way, for the reasons Ms. Ashrafi highlights in her brief, we are unable to affirm.

The trial court may have determined that, even crediting Ms. Ashrafi's testimony, the evidence did not support a finding by a preponderance of the evidence that she had an enforceable oral contract with Mr. Fernandez. Reviewing this legal issue de novo, *Thai Chili, Inc. v. Bennett*, 76 A.3d 902, 909 (D.C. 2013), we cannot agree that Ms. Ashrafi's evidence, if credited, was legally deficient. Ms. Ashrafi presented evidence in the form of her own testimony and supporting documentation; and this evidence, if credited, sufficed to show that she and Mr. Fernandez had agreed to the material terms of a short-term loan and had an intent to be bound by them.

_____

(…continued)
of the evidence an oral agreement"); *cf. Brown v. Brown*, 524 A.2d 1184, 1189–90 (D.C. 1987) (concluding that "a claimant against a sibling's estate for the reasonable value of services performed for that sibling during his or her lifetime should have the burden to demonstrate, by a preponderance of the evidence, the existence of either an express or implied agreement that he or she expected to be paid and that the decedent intended to make payment" and noting that requiring "'clear and convincing' evidence of a contract . . . would create too difficult a barrier for recovery where it is merited, indeed a barrier higher than is common in civil litigation") (internal citation omitted).

Specifically, Ms. Ashrafi testified that in September 2013, she and Mr. Fernandez had an oral agreement that she would lend him $7500 in cash. She explained that she had money "sitting in a bank waiting for my home to be built" and she offered to lend it to Mr. Fernandez with the understanding he was going to use it to pay for cancer treatment. He initially refused the loan but, a few days later, told her "I do need that money." Ms. Ashrafi submitted bank records showing that, on September 18 (a Wednesday), she transferred $7500 from her brokerage account to her checking account. She also submitted a text exchange with Mr. Fernandez informing him of the transfer. Her text stated: "I . . . transferred $7500 to my bank account. When do you want the money order or can I write a check?" He responded: "Thanks babe. I can buy the money order[.] If you want you can give the check tomorrow. . . . I will call them to let them know that Friday [I']ll pay thanks love." Ms. Ashrafi testified that Mr. Fernandez later told her that he did not want to inconvenience her by requiring her to get a money order and that he could not wait for a check to clear because he needed to submit the money toward his treatments that Friday. Her bank statement shows a teller withdrawal of the same amount the next day (Thursday). Ms. Ashrafi also testified that, after withdrawing the funds, she met Mr. Fernandez at his apartment and placed the cash on top of his dresser. Mr. Fernandez put the money in the top drawer before they went out to dinner.

Ms. Ashrafi further presented evidence that she and Mr. Fernandez both understood that the $7500 was a short-term loan. Ms. Ashrafi testified that she and Mr. Fernandez had numerous discussions about him repaying her. Initially, he told her he would repay her by asking his mother to sell some land in Bolivia (where his mother lived). Later, he told her that his mother also had cancer but that his plan was still to repay Ms. Ashrafi with a Bolivian land sale. Ms. Ashrafi testified she did not make a demand for payment until a few months after the relationship ended; at that point she needed the money because her house had been completed. She submitted copies of her text messages and emails documenting her requests for repayment.

It is unclear how the trial court accounted for this evidence in its verdict. Examining the trial court's findings of fact, we note that the court simply documented the "he said; she said" testimony of both parties[3] and never cited, much less detailed, Ms. Ashrafi's documentary exhibits. Likewise, in its

---

[3] Accordingly, the portion of the court's order labeled "findings of fact" is fundamentally lacking; it fails to incorporate credibility determinations and resolve factual conflicts. *See* BLACK'S LAW DICTIONARY (defining "fact-finding" as "[t]he process of considering the evidence presented to determine the truth about a disputed point of fact").

conclusions of law the trial court continued to altogether ignore these materials and, in addition, incorrectly faulted Ms. Ashrafi for failing either to proffer evidence "corroborat[ing]" her testimony that she made the loan or to "create a paper record of the purported loan."

Furthermore, the trial court's reasoning is flawed in multiple respects. First, we are unaware of any corroboration requirement to prove an oral contract. Second, Ms. Ashrafi did provide corroboration, in the form of text messages and bank records, as detailed above. And third, given that Ms. Ashrafi's claim was that Mr. Fernandez had breached an enforceable *oral* contract, a legitimate cause of action in the District,[4] the fact that she did not have a signed written agreement was not an appropriate reason to conclude she had failed to prove her case.

It may be, however, that the court made factual findings adverse to Ms. Ashrafi which led it to conclude that her narrative (that she had an oral contract to loan Mr. Fernandez $7500) was not credible. If that is the case, we run into other difficulties. We review factual findings for clear error. *Thai Chili*, 76 A.3d at 909.

---

[4] *See, e.g.*, *New Econ. Capital*, 881 A.2d at 1094; *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995) ("[P]arties may enter into enforceable oral contracts, as long as they agree to all material terms and intend to be bound by their agreement.").

"A finding is clearly erroneous when . . . the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Abulqasim v. Mahmoud*, 49 A.3d 828, 834 (D.C. 2012) (internal quotation marks omitted).  We are left with such a conviction in this case when we examine the court's determination that "all testimony proffered at trial suggests that [Ms, Ashrafi] was not convinced [Mr. Fernandez] even had cancer."[5]  This finding, in the trial court's view, "coupled with [Mr. Fernandez]'s insistence that he never had cancer or claimed to have an illness, undermine[d] any credible notion of the parties entering into a loan agreement."

The court's predicate finding that Ms. Ashrafi knew Mr. Fernandez was not sick is based on a manifest misunderstanding of the record evidence.  The record reflects that Ms. Ashrafi testified that she believed Mr. Fernandez had cancer, that his cancer story induced her lend him money, and that it was only in hindsight that she realized that he had not looked or acted like someone with cancer and that she had been duped.  Indeed, counsel asked Ms. Ashrafi explicitly, "[f]rom observing Mr. Fernandez, did you see—*after you lent the money*, did you see any evidence of illness that Mr. Fernandez had?  You know, cancer or a related illness?" Ms.

---

[5]  We focus on this determination because the trial court devoted the first of only three paragraphs of analysis to it.

Ashrafi responded, "No. Now that I think back . . .," and then recounted details about Mr. Fernandez that she now recognized were inconsistent with a cancer diagnosis. She explained that, at the time, "it just never clicked."

Moreover, to the extent the court discredited Ms. Ashrafi's testimony because it was not, in the court's view, properly corroborated, the court's decision-making is again compromised by its failure to account for her exchange of text messages with Mr. Fernandez.[6] In these messages, Mr. Fernandez thanked Ms. Ashrafi for transferring money from her brokerage account to her checking account (on Wednesday, September 18) and then told her she could give him the money "tomorrow" (Thursday) and he would then "call them to let them know that Friday [I']ll pay." This documentary evidence confirms multiple aspects of Ms. Ashrafi's testimony regarding the loan agreement: the amount of the alleged loan, the movement of money between accounts, and the explanation Mr. Fernandez gave about his plan to use the money to pay for his cancer treatments. Notably, Mr. Fernandez, who took the stand and denied receiving any money from Ms. Ashrafi,

---

[6] The trial court also seemingly disregarded the testimony Ms. Ashrafi presented from her friend, Victor Criales, who said that she had similarly informally lent him money to tide him over during a bad time. Mr. Criales further testified that Ms. Ashrafi is a "pretty giving" individual and "probably one of the most trustworthy people [he] know[s]."

never provided any explanation for his text exchange about the loan with Ms. Ashrafi.

Lastly, on the subject of Mr. Fernandez's testimony, we note that the trial court never addressed his credibility, even indirectly. A significant part of a trial court's fact-finding role is making credibility determinations, particularly where, as here, a defendant opts to take the stand and challenges the plaintiff's narrative of events. To engage in fact-finding without making credibility determinations is both ineffectual and noncompliant with court rules. *See* Super. Ct. Civ. R. 52 (a) (generally requiring trial courts to issue findings of fact and conclusions of law that "state the controlling factual and legal grounds of decision" and noting that "due regard" must be given "to the trial court's opportunity to judge the witnesses' credibility"); *see also Wright*, 681 A.2d at 1105 (quoting Rule 52).

For the reasons set forth above, we cannot affirm the judgment of the trial court. Accordingly, we reverse and remand the case to allow the court to consider all of the evidence presented; to make proper findings of fact on each materially contested issue, including credibility determinations of all witnesses; and to assess whether Ms. Ashrafi proved her breach of contract claim by a preponderance of the evidence.

*So ordered.*