*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-CV-0540

LEOPOLDO SANCHEZ, *et al.*, APPELLANTS,

v.

SUNDELY LLC, *et al.*, APPELLEES.

Appeal from the Superior Court of the
District of Columbia
(2019-CA-008020-B)

(Hon. Maurice A. Ross, Trial Judge)

(Submitted May 2, 2024                    Decided September 12, 2024)

*Mariusz Kurzyna* was on the brief for appellants.

*Jay S. Weiss* was on the brief for appellees.

Before EASTERLY, HOWARD, and SHANKER, *Associate Judges*.

SHANKER, *Associate Judge*: Appellants Leopoldo Sanchez and Banny de Leon Hernandez (collectively the "employees") sued their employers, appellees Sundely LLC and Shanfen Lin (collectively the "employers"), in Superior Court, claiming that the employers underpaid them for work at a restaurant, in violation of certain wage and labor statutes. The employers had deducted thirty minutes twice a day from the employees' wages for breakfast and lunch breaks, but the employees

maintained that their breaks lasted only ten to fifteen minutes each. After a bench trial, the Superior Court entered judgment for the employers, finding that the breaks lasted at least twenty minutes each. The employees challenge that ruling on appeal as (1) a clearly erroneous interpretation of the evidence presented at trial that must be reversed and (2) legally erroneous because the breaks should have been classified as rest periods, which must be compensated.

We partially agree. We hold that the trial court clearly erred in evaluating the employees' credibility but that other evidence could support the trial court's finding. Therefore, we vacate the trial court's judgment and remand for it to reexamine the evidence. We need not decide whether the breaks should have been classified as rest periods because the classification of the breaks turns, at least in part, on their length, which the trial court must determine anew on remand.

## I.     Background

### A.     Legal Background

The employees brought claims under three statutes: the D.C. Minimum Wage Act ("MWA"), D.C. Code §§ 32-1001 to 1015; the D.C. Wage Payment and Collection Law ("WPCL"), D.C. Code §§ 32-1301 to 1312; and the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 to 219. The employees alleged

that, by not compensating them for their breaks, the employers: (1) failed to pay them the minimum wage for each hour worked, in violation of the MWA, *see* D.C. Code § 32-1003(b); (2) failed to pay them time and a half for hours worked in excess of forty hours a week, in violation of both the MWA and the FLSA, *see id.* § 32-1003(c); 29 U.S.C. § 207(a)(1); and (3) failed to pay them all wages earned, in violation of the WPCL, *see* D.C. Code § 32-1302. Although multiple statutes are involved, the claims all revolve around the same question: did the employees' meal breaks count as working time for which the employers were required to compensate them?

In order to evaluate whether an activity, or in this case a break, counts as working time, courts may look to the United States Department of Labor's regulations. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) ("We consider that the rulings, interpretations and opinions of the Administrator under [the FLSA], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."). These regulations distinguish between two kinds of breaks for purposes of working time. First, there are rest periods: breaks lasting roughly five to twenty minutes. 29 C.F.R. § 785.18. They count as working time, and employers must compensate employees for these rest periods. *Id.* Then there are bona fide meal periods: breaks "[o]rdinarily 30 minutes or more" during which

the employee is "completely relieved from duty for the purposes of eating regular meals." *Id.* § 785.19(a). Meal periods do not count as working time and therefore need not be compensated. *Id.* Despite these benchmarks, the regulations offer little clarity about how to treat breaks used for meals that are longer than about twenty minutes yet shorter than thirty minutes. For purposes of the MWA, these regulations are binding because the statute instructs courts to construe "what constitutes working time" "in accordance with" 29 C.F.R. § 785. D.C. Code § 32-1002(10).[1]

## B.    Factual Background

The parties presented the following evidence at a bench trial. The employees worked for the employers at Jack's Fresh Salad Bar & Grill as general kitchen employees. Throughout the employees' tenure at the restaurant, the employers deducted an hour of time from their wages each day, which corresponded to a thirty-minute breakfast break at 10:00 a.m. and a thirty-minute lunch break at 2:00 p.m.

---

[1] We express no view on whether this reference to 29 C.F.R § 785 refers to the regulations as they existed in 2018—when the most recent version of the MWA was enacted, D.C. Code § 32-1002 (last amended by D.C. Law 22-196, § 6(a) in 2018)—or as they existed at the time the action was brought. In this case, the result would be the same because the relevant regulations have not been amended since the MWA's enactment. 26 Fed. Reg. 190 (1961) (announcing the promulgation of the regulations to be codified in 29 C.F.R. § 785).

5

The employees testified that they typically finished their meals within ten to fifteen minutes. They grabbed already-prepared food from the buffet and ate it in the dining room. Accordingly, the employees did not need to wait in line for their food to be prepared before eating. In addition to eating, the employees would use the breaks to use the restroom. Mr. Sanchez maintained that he never took a meal break longer than twenty minutes. Mr. de Leon testified that he took a break longer than twenty minutes only once, and it was less than thirty minutes. Mr. Sanchez explained that he ate quickly because "they wouldn't give [him] the time to take the 30 minutes," and Mr. de Leon represented that it was because he "had to take care of the other customers." Both employees testified that their supervisor, Tom Yek, could see them while they took their meal breaks because Mr. Yek would stand nearby at the register.

The employees acknowledged that they had signed pay records confirming the total pay received. But in their view, by signing these records they were confirming only that they had received the pay reflected on the document. The records, according to the employees, did not attest to the amount of hours they had actually worked.

The employers sought to impeach Mr. de Leon with an affidavit he had signed, at Mr. Yek's behest, in which he averred that employees were given

thirty-minute breakfast and lunch breaks. On redirect, Mr. de Leon confirmed that he had understood the document but explained that he signed it because Mr. Yek asked him to. Following this testimony, the trial court observed that "whenever [Mr. de Leon] was given a piece of paper," whether by his employer or his attorneys, "he signed it."

Beyond witness testimony, the employees introduced three additional pieces of evidence: pay logs for Mr. Sanchez, pay logs for Mr. de Leon, and Mr. Yek's deposition transcript. Mr. Yek, the aforementioned supervisor and restaurant manager, had passed away shortly before trial.

Mr. Yek stated in his deposition that he posted the restaurant rules in the kitchen and by the restaurant's walk-in cooler, and he had an employee read aloud the rules in Spanish in 2015 when Sundely took over the business.[2] The restaurant rules explained to employees that they were entitled to a breakfast break at 10:00 a.m. and a lunch break at 2:00 p.m. The rules themselves were not admitted into evidence, and none of the testimony about the rules clarified whether they specified the length of the meal breaks or only their start times. Mr. Yek further stated that employees "rarely" took lunch breaks of less than thirty minutes because there were

---

[2] Mr. Sanchez was presumably present for this oral translation, but Mr. de Leon was not because he started working at the restaurant a few months later. Neither employee speaks fluent English.

few customers in the restaurant at those times. He explained that most of the customers were office workers coming in for lunch, so the restaurant's peak hours were between 11:30 a.m. and 1:00 p.m. In response to a follow-up question, Mr. Yek clarified that in the rare circumstance where an employee took a shorter break, he would pay them extra for their time. Mr. Yek confessed, however, that he did not keep track of the length of each employee's breaks because there was "no way" for him to do so. Finally, Mr. Yek explained that employees typically started breaking down the restaurant at 2:20 p.m. and would start cleaning by 2:30 p.m.

After the employees rested their case, the employers moved for a judgment in their favor.[3] The court denied the motion. The court explained that, with respect to

---

[3] The employers cast their motion as one for a directed verdict or, as it is now known, judgment as a matter of law. Such a motion, however, pertains only to jury trials—not bench trials. *See* D.C. Super. Ct. Civ. R. 50(a) ("If a party has been fully heard on an issue *during a jury trial* . . . the court may . . . grant a motion for judgment as a matter of law . . . ." (emphasis added)). We therefore construe "motions for judgment as a matter of law made during bench trials as motions for judgment on partial findings under Rule 52(c)." *Fed. Ins. Co. v. HPSC, Inc.*, 480 F.3d 26, 32 (1st Cir. 2007); *see* D.C. Super. Ct. Civ. R. 52(c); *see also Stop Ill. Health Care Fraud, LLC v. Sayeed*, 957 F.3d 743, 748 (7th Cir. 2020) ("Rule 52(c) provides for judgment based on partial findings, the bench trial equivalent of its more well-known cousin, a motion for judgment as a matter of law (or a directed verdict) under Rule 50(a). Both rules allow the trial court to resolve an issue after a party has been fully heard but before the trial has concluded."); *Wendemu v. Tesema*, 304 A.3d 953, 961 n.4 (D.C. 2023) ("When a local rule and a federal rule are identical, or nearly so, we will construe the local rule in a manner consistent with the federal rule to the extent possible under binding precedent . . . ." (ellipses in original) (quoting *Montgomery v. Jimmy's Tire & Auto Ctr., Inc.*, 566 A.2d 1025, 1027 (D.C. 1989))).

such a motion, the question is whether "the testimony of any witness, if believed, is sufficient enough to carry their burden of proof." "[S]o if you believe [the employees'] testimony at this stage that they only took 10[-] or 15-minute breaks, then they've made a claim that they were shortchanged . . . ."

The employers then called Jing Chang Xu, another kitchen employee at Jack's Fresh Salad & Bar. He testified that he and the other employees, including Messrs. Sanchez and de Leon specifically, were "given" a half hour for breakfast and lunch. He did not specify whether the employees actually took breaks lasting thirty minutes.

After the parties finished presenting evidence, the trial court ordered them to present proposed findings of fact and conclusions of law. The court asked if the employees' position was that if the breaks were less than thirty minutes then they were entitled to compensation for the entire break. The employees' counsel responded that if the breaks were below twenty minutes they were "clearly" "compensable break[s]" but that "there is a grey zone" for breaks between twenty and thirty minutes.

### C.     The Trial Court's Ruling

After the parties submitted their proposed findings of fact, the trial court issued a written decision.  The court found that the employees had "failed to carry their burden" of proving "that they were not compensated for meal breaks of less than thirty minutes."  The court deemed the employees as having "conceded that as long as [they] had breakfast/lunch breaks of between twenty and thirty minutes, [the employers] could properly deduct thirty minutes from [their] time for meal breaks."  The court then found that, "[a]s a practical matter," it was "more likely than not [that the employees] had to take at least twenty minutes for meal breaks."

The court supported its finding with three lines of reasoning.  First, it noted that during their meal breaks the employees needed to use the restroom, wash their hands afterward, wait in line for food, and then wash their hands again after eating.  All these tasks, in the court's view, likely added up to at least twenty minutes.  Second, the court reasoned that surrounding evidence supported the employers' claim that the employees took longer breaks than they claimed.  In particular, the restaurant had posted its rules, which included the break times; Mr. Xu testified that employees were given thirty-minute breaks; and the employees began shutting down the restaurant at 2:20 p.m., twenty minutes after their lunch break, suggesting that the lunch breaks were not shorter than twenty minutes.  Third, the court did not find

the employees credible. The court noted that their testimony "appeared robotic and coached," they could not answer why they signed their timesheets, they did not explain how or when they learned that their timesheets were inaccurate, they did not address why they had to return to work immediately without taking their full breaks, and Mr. de Leon did not address why he could remember only a single instance when he took a break longer than twenty minutes. The court also observed that the employees presented no evidence that they were "pressured or coerced to return to work during the designated meal periods."

The trial court entered judgment for the employers. This appeal followed.

## II.    Discussion

The employees challenge the trial court's decision on two grounds. They argue (1) that the trial court clearly erred in finding that they took breaks of at least twenty minutes and (2) that even if the trial court's factual finding were correct, the court committed a legal error by classifying the breaks as noncompensable meal periods as opposed to compensable rest periods. The parties also dispute who bore the burden of proof in the trial court.

We first address the burden of proof and conclude that it fell on the employees to prove that they were underpaid. We then vacate and remand for further

examination in light of the trial court's finding that the employees' meal breaks lasted at least twenty minutes, because the court's reasoning was clearly erroneous but other evidence could support such a finding. Finally, we observe that, on remand, the trial court must make additional findings about whether the breaks constituted meal periods or rest periods.

## A. Burden of Proof

It is well settled that, generally, the WPCL and FLSA place the burden of proof on employees to demonstrate that they were not compensated for work they performed. *District of Columbia v. Bongam*, 271 A.3d 1154, 1162 (D.C. 2022); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946). Although no prior opinion has addressed the issue, the same should hold true for claims brought under the MWA because MWA claims resemble WPCL and FLSA claims regarding uncompensated work. *Cf. Rodriguez v. Adams Rest. Grp.*, 308 F. Supp. 3d 359, 363 (D.D.C. 2018) ("The legal standards for the overtime provisions of the [Fair] Labor Standards Act and the D.C. Minimum Wage Act are essentially identical . . . .").

The employees contend that the burden of proof shifts to the employer when the question is whether specific hours constituted bona fide meal periods. They appear to argue that meal periods operate as "an exemption" to the compensation requirements, making an employer's deduction of mealtimes an "affirmative defense

on which the employer has the burden of proof." *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974). In the context of the FLSA, some federal courts of appeals have embraced this view. *See Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 265 (5th Cir. 1998) ("The employer bears the burden to show that meal time qualifies for this exception from compensation."); *Roy v. Cnty. of Lexington*, 141 F.3d 533, 544 (4th Cir. 1998) ("[T]he burden rests with the [employer] to demonstrate its entitlement to the mealtime and sleeptime exemptions . . . ."). Others have rejected it. *See Gelber v. Akal Sec., Inc.*, 14 F.4th 1279, 1283 (11th Cir. 2021) ("[I]n meal-period cases, the employee bears the initial burden to show that the meal period constituted work."); *Ruffin v. MotorCity Casino*, 775 F.3d 807, 811 (6th Cir. 2015) ("It is the employee's burden to prove that a meal period is compensable."); *Hertz v. Woodbury Cnty*, 566 F.3d 775, 783 (8th Cir. 2009) ("[A] claim for unpaid mealtime work is no different than other overtime claims where it is the plaintiff's burden to show (1) that the plaintiff has performed compensable work and (2) the number of hours for which the plaintiff has not been properly paid.").

The trial court seems to have placed the burden of proof on the employees. We think that was correct and hold that, with respect to the FLSA, the WPCL, and the MWA, when an employee alleges that their meal breaks were compensable because the breaks do not qualify as bona fide meal periods, the initial burden of proof lies with the employee. As explained above, employees typically bear the

burden of showing that they worked without compensation. *See Bongam*, 271 A.3d at 1162; *Anderson*, 328 U.S. at 686-87. That is what the employees claim here. They argue that, for at least a portion of their thirty-minute breakfast and lunch breaks, they were working rather than resting. In the employees' view, because the employers deducted a full thirty minutes for each break from the employees' pay, they performed work without compensation. That claim resembles an ordinary undercompensation claim, where the employee bears the initial burden of proof. *See Hertz*, 566 F.3d at 775 ("A claim for non-payment of work during an established mealtime is analytically similar to an unpaid overtime claim, not an exemption claim.").

The contrary view relies on casting meal periods as an exemption from the statutes' requirements, because employers typically bear the burden of proving the applicability of exemptions. *See Bernard*, 154 F.3d at 265 (describing meal periods as an exception); *Roy*, 141 F.3d at 544 (same). Although one could think of meal periods as working time exempt from compensation, meal periods do not resemble the other exemptions under the FLSA, MWA, and WPCL, for which employers bear the burden of proof. Exemptions under the FLSA, referred to as exceptions in the MWA, exclude certain categories of employees from the acts' coverage, such as bona fide executives, babysitters, and people who deliver newspapers. *See* 29 U.S.C. § 213 (listing exemptions); D.C. Code § 32-1004 (listing exceptions). Similarly, the

WPCL includes an exception for certain types of employees, like bona fide executives, and provides lesser requirements for these types of employees. D.C. Code § 32-1302. Rather than requiring employees to prove in their affirmative case that none of these exemptions applies, the burden falls on the employer to invoke and prove the applicability of the relevant exemption. *See Corning Glass Works*, 417 U.S. at 196-97 & n.12 (observing that employers must prove the applicability of exemptions under the FLSA and citing four cases that all concerned exempt categories of employees).[4] We do not see the meal-period classification as analogous to the statutory exemptions and exceptions under the FLSA, MWA, and WPCL because it does not exempt categories of employees from the statutes' coverage.

The Department of Labor regulations confirm this view. They do not characterize meal periods as working time exempt from the ordinary compensation requirements but rather declare that "[b]ona fide meal periods are not worktime." 29 C.F.R. § 785.19(a). At least for the MWA, this understanding of worktime is binding. *See* D.C. Code § 32-1002(10). For these reasons, we conclude that where an employer deducted mealtimes from employees' wages, the employees—here

[4] *Corning Glass Works* itself did not involve an exemption but rather made the point in discussing a burden-shifting framework for cases involving the Equal Pay Act. *Id.* at 196-97.

Messrs. Sanchez and de Leon—bear the initial burden of showing that at least a portion of their meal periods constituted working time. *See Gelber*, 14 F.4th at 1283. Only after the employees successfully make this showing will the burden shift to the employer to demonstrate that its automatic deductions were proper. *See id.*; *see also Anderson*, 328 U.S. at 693 (placing the burden on employers to "provide accurate estimates" for their deductions).

## B.    Factual Error

The employees ask us to reverse the trial court's factual finding that their meal breaks lasted at least twenty minutes.  We agree that the trial court erred, but we conclude that a remand, rather than reversal, is appropriate.

### 1.    Standard of Review

We review factual findings in a bench trial for clear error.  *Bongam*, 271 A.3d at 1162.  Our review under the clear-error standard "is circumscribed by the deference [we] must give to decisions of the trier of the fact, who is usually in a superior position to appraise and weigh the evidence."  *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 123 (1969).  Nevertheless, a factfinder clearly errs if, after reviewing the evidence, we are "left with the definite and firm conviction that a mistake has been committed." *Estate of Walker v. Stefan*, 160 A.3d

1165, 1172 (D.C. 2017) (quoting *Abulqasim v. Mahmoud*, 49 A.3d 828, 834 (D.C. 2012)).  This may occur, among other situations, where "[t]he evidence upon which the [factfinder] relies [was] so slight or insufficient as to fail to rationally support a finding upon the appropriate standard of proof," *Mingle v. Oak St. Apartments Ltd.*, 249 A.3d 413, 415-16 (D.C. 2021), or if the factfinder fundamentally misunderstands a piece of evidence upon which it relies, *see Ashrafi v. Fernandez*, 193 A.3d 129, 133 (D.C. 2018).

Clear error, however, does not necessitate reversal, which is the remedy the employees seek here.  "Even where we find [clear] error, 'we may find that the fact of error in the trial court's determination caused no significant prejudice and hold, therefore, that reversal is not required.'"  *Cormier v. D.C. Water & Sewer Auth.*, 84 A.3d 492, 499 (D.C. 2013) (quoting *Stone v. Alexander*, 6 A.3d 847, 851 (D.C. 2010)); *see also R. & G. Orthopedic Appliances & Prosthetics, Inc. v. Curtin*, 596 A.2d 530, 540 (D.C. 1991) (holding that appellate courts should not reverse in civil cases if they are fairly assured that the outcome would have been the same absent the error); D.C. Super. Ct. Civ. R. 61 (instructing courts to "disregard all errors and defects that do not affect any party's substantial rights").  As we have explained, assessing error involves two layers of analysis: "first, whether the exercise of discretion was in error," and, second, "if so, whether the impact of that error requires

reversal." *Stone*, 6 A.3d at 851 (quoting *Johnson v. United States*, 398 A.2d 354, 367 (D.C. 1979)).

That second inquiry into the effect of the error is even more nuanced in bench trials, where the rationale for a decision is typically spelled out. As *Cormier* recognized, a trial court's clearly erroneous factual determination could be harmless and thus permit the appellate court to affirm notwithstanding the error. Or, the evidence before a factfinder might be so one-sided that it demands a specific outcome, and a contrary conclusion would be clearly erroneous and require reversal. *Cf., e.g.*, *Kinney v. United States*, 286 A.3d 1027, 1038 (D.C. 2022) (reversing the trial court for clear error and concluding that law enforcement's failure to give a *Miranda* warning was deliberate "because the government has not produced evidence sufficient to dispel the conclusion that the officers deliberately employed a two-step interrogation tactic to undermine *Miranda*").

But there is a third scenario, at least in situations where the factfinder set forth the reasons for its decision. In these cases, (1) the factfinder reached its decision based on clearly erroneous interpretations of the evidence, (2) the error prejudiced the losing party, but (3) the factfinder could have permissibly reached the same conclusion for reasons other than the ones it gave. In this situation, we cannot say with fair assurance what the factfinder would have done if it had properly assessed

the facts and law. Either affirming or reversing, therefore, would necessarily "substitute our judgment" for that of the factfinder, *Bolton v. Bernabei & Katz, PLLC*, 954 A.2d 953, 967 (D.C. 2008), and we must instead remand. *See, e.g.*, *Stringer v. United States*, 301 A.3d 1218, 1227 (D.C. 2023) (holding that the trial court clearly erred in its credibility determinations but observing that, "as an appellate court, we are poorly situated to determine that [the witness] *was* credible" and remanding for the trial court to reconsider the witness's credibility); *Veasey v. Abbott*, 830 F.3d 216, 234-35 (5th Cir. 2016) (en banc) (remanding after concluding that the trial court clearly erred because although the court's "analysis contained some legal infirmities, the record also contained evidence that could support" its ultimate conclusion).

In our view, this case falls into that third category: a clearly erroneous factual finding that requires remand, not reversal, because the error may have affected the outcome of the case but the evidentiary record does not preclude the outcome that the trial court reached.

## 2. Analysis

The employees argue that the trial court's factual finding constituted clear error because it was based on a misunderstanding of the record. We agree.

One of the main reasons that the trial court concluded that the meal breaks lasted at least twenty minutes is that the court did not find Messrs. Sanchez and de Leon credible. "The judge, as the trier of fact, was free to discredit [the employees'] factual assertions . . . ." *Sivaraman v. Guizzetti & Assocs., Ltd.*, 228 A.3d 1066, 1079 (D.C. 2020). But the reasons "*why* the trial court did not believe [the employees' testimony] is critical to our review." *Stringer*, 301 A.3d at 1229.

The court was not persuaded by the employees' testimony because that testimony appeared "robotic and coached" and because omissions in the testimony raised more questions than the testimony answered. In particular, the trial court observed that the employees did not explain (1) why they signed their timesheets despite claiming that they were underpaid, (2) when and how they learned that they were being underpaid, (3) why they returned to work before finishing their full breaks, and (4) why Mr. de Leon could recall only one instance when he took a break over twenty minutes.

At least two of these asserted omissions lack support in the record. Both employees explained why they signed the timesheets. In their understanding, signing the timesheets meant affirming that they had received the dollar amount written on the document—not that the timesheet accurately reflected the hours they had worked. Indeed, they referred to the documents as pay records rather than as

timesheets. Mr. Yek indicated in his deposition that he shared the employees' understanding about the timesheets.[5] The employees also addressed why they could not take their full breaks, explaining that the press of work required them to return to their duties before the full thirty minutes expired. By faulting the employees for failing to testify to things that they did in fact testify to, the trial court clearly erred. *See Ashrafi*, 193 A.3d at 133 (concluding that the trial court clearly erred when it predicated its factual finding on a "misunderstanding of the record evidence").

We cannot say with fair assurance that these errors were harmless. To be sure, the court gave other reasons for not crediting the employees' testimony: the robotic nature of the testimony, the failure to address when and how they learned that they were being underpaid, and Mr. de Leon's failure to explain why he could remember only one instance of taking a break longer than twenty minutes. We do not know, however, how important these additional omissions were to the trial court's credibility determination relative to its erroneous considerations. *Cf. Caston v. United States*, 146 A.3d 1082, 1096-97 (D.C. 2016) ("[M]inor inconsistencies and

---

[5] The trial court also referenced an interrogatory in which the employees were asked what hours they believed they had worked and which they answered by referencing the timesheets. That interrogatory response was not in the trial record and therefore could not provide a factual basis for the court's finding. *See* 8B Richard L. Marcus, *Federal Practice and Procedure* § 2180 (3d ed.) ("The answers to interrogatories are not part of the pleadings and they are not considered evidence unless introduced as such at the trial.").

omissions will not support an adverse credibility determination." (brackets in original) (quoting *Zhang v. Holder*, 737 F.3d 501, 504 (8th Cir. 2013))). It is also true that the trial court offered other reasons for its finding that the breaks lasted at least twenty minutes aside from its credibility determination. But because this case largely hinged on the relative credibility of the witnesses on each side, we are not confident that the trial court would have reached the same conclusion if it had found the employees credible. *Cf. Stringer*, 301 A.3d at 1229 ("[W]e cannot be confident that, had the court's decision not been influenced by [its erroneous findings], it would have reached the same conclusion . . . .").[6]

At the same time, although the court erred, and that error was not necessarily harmless, reversal of the trial court's factual finding is not warranted here. Because we are unable to discern how the trial court might have weighed the evidence in this scenario, vacatur and remand is appropriate so that the trial court may weigh the evidence again.

---

[6] Some of these other bases for the trial court's finding suffered from their own infirmities. For example, part of the reason the trial court concluded that the breaks must have lasted at least twenty minutes is that employees had to "stand in line for food" during their breaks. But when the court asked Mr. Sanchez about this, he answered "no," because employees could simply take already-prepared food from the buffet. We are unaware of any contrary evidence.

## C.     Legal Error

The employees also contend that the trial court legally erred in concluding that the breaks constituted meal breaks rather than mere rest periods.  We need not address this argument, however, because we are vacating the underlying factual finding about the length of the breaks.  That factual finding informs, at least in part, whether the breaks count as meal periods or rest periods.

Under the Department of Labor's regulations, breaks shorter than "about" twenty minutes typically constitute rest periods, which amount to compensable working time, *see* 29 C.F.R. § 785.18; breaks of at least thirty minutes used for eating meals generally fall into the category of meal periods and thus are not working time, *see id.* § 785.19(a).  Breaks lasting between twenty and thirty minutes, particularly when designed for employees to eat a meal without being on call for work, fall into what the employees aptly termed a "gray zone."  They may or may not count as meal periods depending, at least in part, on whether certain unspecified "special conditions" apply. *Id.* § 785.19(a).

The trial court did not enter a specific conclusion about whether the employees' meal breaks counted as bona fide meal periods.  Implicit in the trial court's determination, however, is a conclusion that the breaks were bona fide meal periods—if the breaks were rest periods, the employees would have been entitled to

relief. That conclusion appears to have been based on the court's understanding that the employees had "conceded that as long as [they] had breakfast/lunch breaks between twenty and thirty minutes, [the employers] could properly deduct thirty minutes from [their] time for meal breaks." The employees deny ever making this concession, and we cannot find such a concession in the record. To the contrary, the employees' counsel maintained that while breaks under twenty minutes were "clearly" "compensable," breaks between twenty and thirty minutes fell into a "grey zone" that might be compensable. This was hardly a concession that, if the employees' breaks lasted longer than twenty minutes, the employees were not entitled to any compensation.

On remand, after the trial court determines the length of the breaks—or at least whether the employees have proven the breaks were less than thirty minutes—it will need to evaluate whether the breaks constitute meal breaks or rest periods.[7]

---

[7] As the employees point out, the trial court's finding that the meal breaks lasted at least twenty minutes was not itself sufficient to resolve the case even if those breaks constituted bona fide meal periods. If, for example, the court found that the employees' breaks lasted twenty-five minutes, and those breaks were bona fide meal periods, the employees would still have been shortchanged by five minutes per break because the employers deducted thirty minutes for each break. Employers may round when computing break periods but only if it "averages out," that is, only "provided that [the rounding] is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." 29 C.F.R. § 785.48(b).

### III. Conclusion

For the foregoing reasons, we vacate the trial court's opinion and order and remand for further proceedings consistent with this opinion.

*So ordered.*